UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES ANTHONY BROOKS,

                          Plaintiff,

                                                              1:24-CV-0970
v.                                                            (AMN/ML)

ALBANY STRATTON VETERANS HOSP.,
Chief Administrator; ALBANY STRATTON
VETERANS HOSP. EMERGENCY ROOM;
and DR. JENNIFER KEIFFER, Primary Care
Blue Team, Albany Stratton Veterans Hosp.,

                          Defendants.
_____

APPEARANCES:                                                 OF COUNSEL:

JAMES ANTHONY BROOKS
  Plaintiff, *Pro Se*
203 Sheridan Avenue, Apartment 2
Albany, New York 12210

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent a complaint in the above captioned action together with an application

to proceed *in forma pauperis*, filed by James Anthony Brooks ("Plaintiff") to the Court for

review.  (Dkt. Nos. 1, 2.)  For the reasons discussed below, I (1) grant Plaintiff's *in forma*

*pauperis* application (Dkt. No. 2), and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be

dismissed with leave to amend.

## I.    INTRODUCTION

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that he received insufficient care provided by defendants Albany Stratton Veterans Hospital ("ASVH"), Albany Stratton Veterans Hospital Emergency Room ("ASVH ER"), and Dr. Jennifer Keiffer (collectively "Defendants").  (*See generally* Dkt. No. 1.)

The Complaint alleges that on October 13, 2021, Plaintiff arrived at Defendant ASVH ER seeking treatment for chronic back pain from an injury that he sustained while on active duty. (Dkt. No. 1, Attach. 1 at 1.)  The Complaint alleges that on October 13, 2021, the emergency room doctor prescribed three injections, two of which Plaintiff had received previously.  (*Id.*) The Complaint alleges that after Plaintiff received the injections, he received his discharge paperwork and was not told to wait for ten to fifteen minutes (as he had previously been told when receiving two of the injections).  (Dkt. No. 1, Attach. 1 at 3.)  Plaintiff alleges that he stood up, put on his coat, and took three steps then blacked out and fell to the floor.  (*Id.*)  Plaintiff alleges that Defendant ASVH ER staff put him on a stretcher, where he remained for at least thirty minutes before his family arrived to bring him home.  (*Id.*)

Plaintiff alleges that between October 13, 2021, and March 2022, Plaintiff went back to Defendant ASVH ER and other emergency rooms in the Albany area over twenty-two times. (*Id.*)  Plaintiff appears to allege that his primary care doctor, Defendant Keiffer, was slow to order any tests but that when X-rays and MRIs were taken, it was revealed that Plaintiff had broken a spinal fusion that he received in April 2011.  (Dkt. No. 1 at 4; Dkt. No. 1, Attach. 1 at 3.)  Plaintiff alleges that surgery to address his injury has been rescheduled due to other health

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

conditions, and thus, the matter is ongoing.  (*Id.*)  Plaintiff alleges that he is "at a 10 pain level

24/7."  (*Id.*)  Plaintiff alleges that Defendant Keiffer's medical report stating that Plaintiff suffers

opioid abuse was slander.  (Dkt. No. 1, Attach. 1 at 4.)

Based on these factual allegations, Plaintiff appears to assert the following two claims:

(1) a claim of negligence pursuant to the Federal Tort Claims Act ("FTCA"); and (2) a claim of

medical malpractice pursuant to the FTCA.  (Dkt. No. 1, Attach. 1 at 2.)  As relief, Plaintiff

seeks damages in the amount of $150,000.00.  (Dkt. No. 1 at 4; Dkt. No. 1, Attach. 1 at 1.)

Plaintiff also seeks leave to proceed *in forma pauperis*.  (Dkt. No. 2.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's *in

forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[3]

---

[2]    The language of that section is ambiguous because it suggests an intent to limit
availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1)
(authorizing the commencement of an action without prepayment of fees "by a person who
submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts
have construed that section, however, as making *in forma pauperis* status available to any litigant
who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed.
Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been
granted, he is still required to pay fees that he may incur in this action, including copying and/or
witness fees.

### III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

4

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed.

"In order to sue under the FTCA, . . . a plaintiff must comply with certain procedural requirements[.]" *Est. of George v. Veteran's Admin. Med. Ctr.*, 821 F. Supp. 2d 573, 577 (W.D.N.Y. 2011). Specifically, "[b]efore bringing a claim in a federal district court under the FTCA, a claimant must first exhaust [his or] her administrative remedies by filing a claim for monetary damages with the appropriate federal government entity and must receive a final written determination." *Terry v. U.S. Off. of Pers. Mgmt.*, 16-CV-7475, 2016 WL 10570946, at *1 (S.D.N.Y. Dec. 23, 2016) (citing 28 U.S.C. § 2675(a)). "Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual." *Ruiz v. Fed. Police Dep't*, 23-CV-7421, 2023 WL 6610762, at *3 (S.D.N.Y. Oct. 10, 2023) (citing 28 U.S.C. §§ 2401(b), 2675(a)). "A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity." *Ruiz*, 2023 WL

6610762, at *3 (citing 28 U.S.C. § 2401(b)). "If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court." *Id*. (citing 28 U.S.C. § 2675(a)). "This [exhaustion] requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see Spina v. Lu Feng Liu*, 541 F. Supp. 3d 426, 433 (S.D.N.Y. 2021) ("Where a plaintiff fails to exhaust administrative remedies, the district court lacks subject matter jurisdiction over the FTCA claims."); *see also Phipps v. United States*, 21-CV-0105, 2021 WL 5534701, at *3 (N.D.W. Va. Aug. 16, 2021) (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)) ("Because the FTCA waives the United States traditional grant of sovereign immunity, the statute must be strictly construed."), *report and recommendation adopted*, 2021 WL 4739497 (N.D.W. Va. Oct. 12, 2021).

Plaintiff attached a Standard Form 95 ("SF-95") to his Complaint. (Dkt. No. 1, Attach. 1 at 1-4.) Plaintiff's SF-95 is dated July 12, 2024, and states that it was submitted to this Court—notwithstanding its identification of Defendants ASVH and ASVH ER throughout. (*Id*. at 1.) On the form, Plaintiff states that the basis of his claim:

> On or about 10/13/21, I went to the Emergency Room it was very early in the Morning. The V.A. Hospital E.R. wasn't crowded. I was seen [illegible] of quickly for the E.R. Back pain that is chronic, or injury reserve while on Active Duty. Back was hurting really bad AND I had several visit to the E.R. The month before Doctor came in a prescribe 3 injections, two I had before, but not [illegible]. . . . After the nurse giving the shots . . . I stood up and put my coat on. I got up and I took 3 steps and I blackout. . . . I complained to the Blue Team Primary Care Doctor [Defendant] Keiffer, VA Hospital Stratton, Albany, New York. I went back to the V.A. Emergency Room and other (E.R's) in the Albany Area over 22 times from October 13 2021 to March 2022. Before Dr. Keiffer ran any tests. I went to everyone that you would go to. Patient Advocate, Mental Health, Pain management. I am still suffering and this case is on going.

(Dkt. No. 1, Attach. 1, at 1, 3.)  Plaintiff seeks $150,000.00 in damages.  (Dkt. No. 1, Attach. 1 at 1.)

Plaintiff's pleading is insufficient for two reasons.

First, Plaintiff's claim is untimely.  "Typically, FTCA medical malpractice claims accrue 'at the time of injury.'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).  Thus, Plaintiff's claim likely began accruing on October 13, 2021, when he injured himself.  Plaintiff's SF-95 states that the date and day of accident was "13 October 2021."  (Dkt. No. 1, Attach. 1 at 1.)

However, construing the Complaint with the utmost liberality, Plaintiff appears to assert that his injury is ongoing.  Where a plaintiff "would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies."  *Kronisch*, 150 F.3d at 121.  "The diligence-discovery rule sets the accrual date at the time when, with reasonable diligence, the plaintiff has or . . . should have discovered the critical facts of both his injury and its cause."  *A.Q.C. ex rel. Castillo*, 656 F.3d at 140 (internal quotation marks and citation omitted).

The Complaint alleges that in July 2022, Plaintiff was scheduled for surgery to fix the broken spinal fusion.  (Dkt. No. 1, Attach. 1 at 3.)  Based on the medical records attached to the Complaint, (1) Plaintiff presented to the hospital on May 21, 2022, and reported that he was scheduled to have back surgery in June (Dkt. No. 1, Attach. 1 at 78), (2) a routine MRI of Plaintiff's thoracic and lumbar spines was performed without intravenous contrast and the report was verified on June 1, 2022, and compared with a CT of Plaintiff's thoracic spine dated November 12, 2021 (Dkt. No. 1, Attach. 1 at 82-86), and (3) on June 11, 2022, Plaintiff presented at the hospital and it was reported that he was "scheduled for a spinal surgery in a

probable fusion in 4 days." (Dkt. No. 1, Attach. 1 at 92-95.) Thus, even if the "diligence-discovery rule of accrual" applied in this matter, Plaintiff knew or should have discovered the critical facts of both his injury and its cause on or before his hospital visit on May 21, 2022, when he reported that back surgery was scheduled. Plaintiff's SF-95 form was dated July 12, 2024, more than two years after Plaintiff had or should have discovered the critical facts of both his injury and its cause, and thus, it was untimely.

Second, in the alternative, Plaintiff has not provided documentation that the Department of Veterans' Affairs (or the Northern District of New York) received or responded to his SF-95. *See Jaghama v. United States,* 11-CV-5826, 2013 WL 508497, at *2 (E.D.N.Y. Feb. 11, 2013) (citing *Pinchasow v. United States,* 408 F. Supp. 2d 138, 143 (E.D.N.Y. 2006), *aff'd* 2006 WL 3370714 (2d Cir. 2006)) ("A plaintiff must provide proof that his notice of claim was received by the appropriate agency in the time and manner prescribed by the FTCA or its implementing regulations."); *see also Phillips v. United States,* 23-CV-1209, 2023 WL 6381428, at *3 (E.D. Mo. Sept. 28, 2023) ("Plaintiff, however, has failed to . . . provide the Court the final Agency Decision made by the VA [and t]o ascertain whether [the] plaintiff is . . . suing in a timely manner, the Court must have the Agency Decision from the VA."). Similarly, Plaintiff has not pleaded that the Department of Veterans' Affairs (or the Northern District of New York) responded to his SF-95 or rendered a decision on his claim. *See Bantis v. Gov't USA,* 23-CV-2492, 2023 WL 3977367, at *2 (S.D.N.Y. June 12, 2023) (dismissing the plaintiff's FTCA claim for lack of subject matter jurisdiction because the plaintiff "ha[d] not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal government entity for damages and subsequently received a final written determination before bringing this action; . . . or that it has been more than six months since he has filed such an administrative claim"); *see*

*also Greenland v. United States,* 22-CV-4974, 2022 WL 2702656, at *3 (S.D.N.Y. July 11, 2022) (dismissing the plaintiff's FTCA claim under the doctrine of sovereign immunity where the plaintiff failed to allege that he received an agency denial of his administrative claim before bringing action in the federal district court).  Plaintiff commenced this action August 7, 2024, and thus, it has not been more than six months since he filed an administrative claim.

Plaintiff has failed to sufficiently plead compliance with the FTCA's exhaustion requirements.  *See Spina*, 541 F. Supp. 3d at 433 ("A plaintiff bears the burden to plead and prove compliance with the exhaustion requirements of the FTCA."); *see also Santillan v. United States*, 19-CV-5410, 2020 WL 902922, at *3 (E.D.N.Y. Feb. 25, 2020); *Shah v. Wingo*, 15-CV-0004, 2016 WL 4766502 (E.D. Ark. Jan. 14, 2016) (recommending dismissal for the plaintiff's failure to exhaust his FTCA claim where the plaintiff failed to establish that, prior to filing suit, he presented his claim to the appropriate federal agency and it was denied in writing), *report and recommendation adopted*, 2016 WL 4744150 (E.D. Ark. Sept. 12, 2016).  Therefore, it is recommended that plaintiff's FTCA claim against the United States be dismissed for lack of subject matter jurisdiction.  *See Adeleke v. United States*, 355 F.3d 144, 154 (2d Cir. 2004) (holding that, where the plaintiff fails to administratively exhaust his FTCA claim, there is no federal jurisdiction to hear such claim); *see also Vazquez v. Hometown Health Ctr. of Amsterdam, NY*, 21-CV-1371, 2022 WL 2304213, at *5 (N.D.N.Y. June 27, 2022) (Hummel, M.J.) (citing *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")) ("As plaintiff failed to plead compliance with the FTCA's exhaustion requirements, the undersigned recommends dismissal of the complaint without prejudice.").

For each of these reasons, I recommend that Plaintiff's Complaint be dismissed.[4]

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

In deference to plaintiff's pro se status, and because a more detailed pleading could potentially cure the defects identified, the undersigned recommends dismissing plaintiff's FTCA

---

[4]    The undersigned notes that "[t]he proper defendant in a FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, 14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015).

[5]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

claim against the United States without prejudice and with leave to amend.  *See Greenland*, 2022
WL 2702656, at *3 (granting leave to amend for the plaintiff to establish he exhausted his FTCA
claim by demonstrating he "received a final, written agency decision, or . . . the agency failed to
respond within six months after receipt of [the p]aintiff's administrative claim").

If Plaintiff chooses to file an amended complaint, he should note that in any amended
complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates,
times, and places of the alleged underlying acts, and each individual who committed each alleged
wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific
involvement of any of the named defendants in the constitutional deprivations alleged in
sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v.
Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended
complaint will replace the existing Complaint, and must be a wholly integrated and complete
pleading that does not rely upon or incorporate by reference any pleading or document
previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d
Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original
and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is
**GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED
WITHOUT PREJUDICE and WITH LEAVE TO REPLEAD** pursuant to 28 U.S.C. §
1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: January  7 , 2025
        Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[6]       The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]       If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 13 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 14 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

#### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

& Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (Compare Dkt. No. 62 [Defs.' Rule 7.1 Statement] with Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. See Davis v. Cumberland Farms, Inc., 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); Aktas v. JMC Dev. Co., Inc., 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (Id., ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (Id., ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (Id., ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (Id., ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (Id., ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (Id., ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (Id., ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (Id., ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (Id., ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (Id., ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (Id., ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (Id., ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (Id., ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (Id., ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (Id., ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (Id., ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (Id., ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 16 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

 **\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 1:24-cv-00970-AMN-ML   Document 5   Filed 01/07/25   Page 17 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Case 1:24-cv-00970-AMN-ML Document 5 Filed 01/07/25 Page 18 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

---

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 20 of 83

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

---

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 10570946
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Elizabeth Marie TERRY, Plaintiff,

v.

U.S. OFFICE OF PERSONNEL
MANAGEMENT, Defendant.

16–CV–7475 (CM)
|
Signed 12/23/2016

**Attorneys and Law Firms**

Elizabeth Marie Terry, New York, NY, pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge

**\*1** Plaintiff Elizabeth Marie Terry, appearing *pro se*, brings this action alleging that the United States Office of Personnel Management (OPM) negligently allowed her Social Security number and other private information to be obtained by a "cyber-intru[der]," causing her damages. (Am. Comp. at 3.) By order dated October 3, 2016, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. On October 12, 2016, the Court granted Plaintiff leave to amend her complaint (1) to allege whether she exhausted her administrative remedies before filing suit, as required by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 (FTCA), and (2) to substitute the United States as a defendant in place of OPM, which the Court dismissed from this action. Plaintiff filed an amended complaint on December 14, 2016. For the reasons that follow, the Court dismisses this action in its entirety.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction.

*See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff, a Manhattan resident, uses the Court's amended complaint form, invokes the Court's federal question jurisdiction, and alleges as follows: Plaintiff served as a volunteer in the AmeriCorps VISTA program. As part of that program, Plaintiff gave personal information, including her Social Security number and fingerprints, to OPM and the Federal Bureau of Investigation (FBI) for use in a criminal background check. Plaintiff contends that due to OPM's negligence, "a cyber-intrusion was carried out against the federal government's VISTA volunteers," resulting in Plaintiff's "FBI criminal history check fingerprinting [being] compromised." (Am. Comp. at 3.) OPM sent Plaintiff a letter confirming that the security of Plaintiff's personal information had been breached and offering Plaintiff "ID expert services for the next three years." (*Id.*) Plaintiff states that as a result of the breach, her "personal property" has been damaged. (*Id.* at 3.) She sues OPM, and she seeks both compensatory damages and an apology letter from OPM. (*Id.* at 4.)

**DISCUSSION**

The Court construes Plaintiff's allegations as raising claims under the FTCA. That statute provides for a waiver of sovereign immunity for injuries arising from the tortious conduct of federal officers or agents acting within the scope of their office or employment. 28 U.S.C. § 1346(b)(1). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust her administrative remedies by filing a claim for monetary damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a); *A.Q.C. ex rel Castillo v. United States,* 715 F. Supp. 2d 452, 457 (2d Cir. 2010) (citing *Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 720 (2d Cir. 1998)). A claimant may thereafter challenge

Terry v. U.S. Office of Personnel Management, Not Reported in Fed. Supp. (2016)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 22 of 83

the agency's final denial in a federal district court by filing an action within six months of the date of the mailing of the notice of final denial by the agency. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring a FTCA action in a federal district court. *See* § 2675(a).

**\*2** In the Court's order dated October 12, 2016, the Court noted that Plaintiff had failed to allege that she exhausted her administrative remedies with OPM prior to filing suit. The Court therefore directed Plaintiff to file an amended complaint to demonstrate that she exhausted her administrative remedies. [1]

In the amended complaint, however, Plaintiff does not address any of the deficiencies set forth in the Court's October 12, 2016 order. Specifically, Plaintiff does not describe any efforts to exhaust her administrative remedies before filing suit. Because it appears that Plaintiff has not exhausted her administrative remedies, this Court lacks subject-matter jurisdiction over Plaintiff's FTCA claims. *See McNeil v. United States, 508 U.S. 106, 113 (1993)* ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994)* (dismissing FTCA claim for lack of subject matter jurisdiction where plaintiff failed to first present claim

to appropriate administrative agency). The Court therefore must dismiss Plaintiff's FTCA claims without prejudice to Plaintiff's refiling such claims against the United States after she exhausts her administrative remedies under the FTCA. *See 5 C.F.R. §§ 177.101–177.110* (detailing administrative remedies for claims against OPM).

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. This action, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed for lack of subject-matter jurisdiction. *See Fed. R. Civ. P. 12(h)(3)*.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States, 369 U.S. 438, 444–45 (1962)*.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2016 WL 10570946

---

## Footnotes

1    The Court also directed Plaintiff to substitute the United States as a defendant in place of OPM because " 'only the United States may be held liable for torts committed by a federal agency, and not the agency itself.' " (*See* Order dated October 12, 2016, at 4 (quoting *C.P. Chem. Co. v. United States, 810 F.2d 34, 37 n.1 (2d Cir. 1987)*)).)

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6610762
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel RUIZ, Plaintiff,
v.
FEDERAL POLICE DEPARTMENT, Defendant.

23-CV-7421 (LTS)
|
Signed October 10, 2023

**Attorneys and Law Firms**

Angel L. Ruiz, Bronx, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

 **\*1** Plaintiff, who is proceeding *pro se*, brings this
action under the court's diversity jurisdiction, alleging that
unidentified officers employed at the 40 Foley Square
federal courthouse in Manhattan violated his rights by using
excessive force against him. By order dated August 31, 2023,
the Court granted Plaintiff's request to proceed *in forma
pauperis* ("IFP"), that is, without prepayment of fees. For the
reasons set forth in this order, the Court dismisses this action,
but grants Plaintiff 60 days' leave to replead his claims in an
amended complaint.

STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman*

*v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it
does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff, a resident of Bronx, New York, brings this action
against the "Federal Police Department," for alleged violation
of his rights at the 40 Foley Square federal courthouse in
Manhattan. He invokes diversity jurisdiction and asserts that
Defendant "violated my rights for being disable[d]." (ECF 1,
at 2.) [1]

 **\*2** Plaintiff alleges that in January 2018, he arrived at
the federal courthouse for court proceedings, and sat on his
walker while waiting to pass through a metal detector. He
then had a seizure and fell on the floor. The seizure "became
severe," and Plaintiff's partner attempted to help him, but five
members of the "Federal Police" pushed his partner away. (*Id.*
at 5.) Plaintiff alleges that the following happened:

> they was around me and 1 officer. Grab
> me from my jacket when I was on the
> floor while I was having my seizure.
> He lift me up and punched me with
> his hand and with the other hand he
> punched me in my chest over my heart

area. And I fall back and cracked my
left should on the floor.

(*Id.* at 5-6.) Plaintiff asserts that he was on the floor for 30 minutes before an ambulance arrived and took him to the hospital. He claims that although the 5 officers had body cameras and there are hundreds of cameras at the courthouse, the officers did not "report the hate crime to [the] court or the D.O.J." (*Id.* at 6.) Plaintiff also claims that he wrote seven letters to the court and the judge "to do an investigation and report to the D.O.J. [a]nd they refuse[d][,] [s]o they cover[ed] [this] hate crime." [2]

Plaintiff alleges the following as his injuries: "Permanent injury in my left shoulder. And this create the P.S.D. and affected my disability. For the rest of my life." (ECF 1, at 6.) He seeks $10 million in damages.

### DISCUSSION

Plaintiff brings this action under the Court's diversity jurisdiction against the "Federal Police Department," an entity that does not exist. It appears, however, that Plaintiff is attempting to bring claims against the entity that employs the five officers who he alleges were involved in the January 2018 incident at the 40 Foley Square federal courthouse. The Court can presume that these individuals were Court Security Officers ("CSOs") or members of the United States Marshals Service ("USMS"). [3] Because Plaintiff is bringing tort and other claims arising out of an incident at a federal courthouse, the Court construes the complaint as bringing federal claims under the Court's federal question jurisdiction.

### A. Sovereign Immunity and the Federal Torts Claims Act ("FTCA")

 **\*3**  Any claims Plaintiff may be asserting against the United States of America, the USMS, or any other federal entity are barred under the doctrine of sovereign immunity. The doctrine bars federal courts from hearing all suits against the federal government and its agencies, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency ... is essentially a suit against

the United States, such suits are ... barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The Federal Tort Claims Act ("FTCA") provides a waiver of sovereign immunity for certain claims arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. The proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at \*1 (D. Conn. Jan. 9, 2015). The Court therefore construes Plaintiff's claims as brought against the United States of America.

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claims. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Specifically, before bringing a damages claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court. *See* § 2675(a).

Inasmuch as Plaintiff's allegations can be construed as damage claims under the FTCA against the United States, he has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal governmental entity for damages and received a final written determination before bringing this action; nor has he alleged facts showing that it has been more than six months since he has filed such an administrative claim. Although Plaintiff alleges that he submitted seven letters to the court and the judge seeking an investigation of the incident, there is no indication that these alleged letters were administrative claims that specified the amount of damages sought as required by the FTCA. As Plaintiff does not allege or show that he

exhausted his claims prior to bringing this action, the FTCA does not provide a waiver of sovereign immunity in this case. Therefore, Plaintiff's claims, which are construed as brought against the United States, are barred under the doctrine of sovereign immunity.

Because Plaintiff may be able to allege facts showing that he exhausted a claim under the FTCA by filing an administrative claim with the appropriate agency, the Court grants Plaintiff 60 days' leave to file an amended complaint to state facts in support of any FTCA claim against the United States he wishes to pursue.

## B. Constitutional Tort Claims

**\*4** Plaintiff's complaint could also be read as an attempt to assert constitutional tort claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [4] A plaintiff may bring *Bivens* claims against a federal official to seek redress for a violation of his or her constitutional rights. [5] *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under 42 U.S.C. § 1983]."). However, *Bivens* relief is available only against federal officials who are personally liable for the alleged constitutional violations; it does not overcome the sovereign immunity that bars suits for money damages against the United States, its agencies or federal officials sued in their official capacities. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017); *Turkmen v. Hasty*, 789 F3d 218, 233 (2d Cir. 2015); *Wright v. Condit*, No. 13-CV-2849, 2015 WL 708607, at \*1 (S.D.N.Y. Feb. 18, 2015) (citation omitted); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994) (holding that *Bivens* provides no cause of action against the United States or its agencies); *Hightower v. United States*, 205 F. Supp. 2d 146, 155 (S.D.N.Y. 2002) (the United States has not consented to be sued under *Bivens*). Because Plaintiff did not name individual defendants subject to *Bivens* liability, [6] the Court need not reach the issue of whether he has an implied cause of action under *Bivens*. [7]

**\*5** Moreover, even if Plaintiff had asserted claims against individual defendants, it appears that any potential *Biven* claims that he could assert arising from the February 2018 incident would be time-barred. Claims brought under *Bivens* borrow the statute of limitations for claims under 42 U.S.C. § 1983. *See Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). The limitation period for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for

personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. *See* N.Y. C.P.L.R. § 214(5). Under federal law, claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

Plaintiff filed this complaint on August 18, 2023. Therefore, he is precluded from pursuing any claims under for claims that accrued before August 18, 2020. Plaintiff brings this action asserting claims arising out of conduct that occurred in February 2018. It therefore appears that the statute of limitations period for Plaintiff's claims expired well before he filed this action and that any claims he seeks to assert under *Bivens* are time barred. [8]

It is clear that Plaintiff filed his claims well beyond the expiration of the applicable statute of limitations. Normally, the Court would grant him leave to plead any facts showing that equitable tolling applies [9] but, as discussed above, Plaintiff has not stated a claim for damages under *Bivens* against any individual defendant. Any claim for damages that Plaintiff is attempting to assert under *Bivens* must therefore be dismissed for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C. Claim of Disability Discrimination

Plaintiff refers to his disability and asserts that his rights were violated because he is disabled. To the extent Plaintiff's assertion could be considered as a claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796, it must be dismissed. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance or under any program or activity conducted by any [e]xecutive agency." 29 U.S.C. § 794(a). To assert a claim under the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that the defendants are subject to [the Rehabilitation Act]; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability." *Harris v. Mills*, 572 F.3d 66, 73–74 (2d Cir. 2009).

**\*6** Here, assuming Plaintiff was disabled within the meaning of the Rehabilitation Act, he does not plead any facts that give rise to an inference that the officers at the 40 Foley Square courthouse engaged in any behavior by reason of his disability. Plaintiff does not allege that the actions of which he complains were based on a facially neutral policy that has a discriminatory effect on those with disabilities, that there was a failure to accommodate his disability, or that he was otherwise discriminated against because of his disability. Plaintiff thus fails to state a claim under the Rehabilitation Act. The Court therefore dismisses Plaintiff's disability based claim for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Furthermore, any claims Plaintiff may have under the Rehabilitation Act appears to be barred by the applicable statute of limitations. Because the Rehabilitation Act does not contain a statute of limitations, courts look to analogous state law to determine the applicable limitations period. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005) ("To determine the applicable statute of limitations for a cause of action created by a federal statute, we first ask whether the statute expressly supplies a limitations period. If it does not, we generally 'borrow' the most closely analogous state limitations period."). Similar to Section 1983 and *Bivens* claims, New York's three-year personal injury statute of limitations also applies to claims brought under the Rehabilitation Act. *See* N.Y. C.P.L.R. § 214(5); *see also Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014) (applying New York's three-year statute of limitations to claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act); *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) (applying New York's three-year statute of limitations to claims under the Rehabilitation Act); *Best v. Bell*, No. 13-CV-0163 (JPO), 2014 WL 1316773 at \*6 (S.D.N.Y. Mar. 28, 2014) (applying New York's three-year statute of limitations to claims under Title II of the ADA and Rehabilitation Act). Claims under the Rehabilitation Act also accrue when the plaintiff knew or had reasons to know of the injury giving rise to his claims. *See Hogan*, 738 F.3d at 518; *see also Stropkay*, 593 F. App'x at 41; *Harris*, 186 F.3d at 247; *Best*, 2014 WL 1316773, at \*5.

The Court, however, grants Plaintiff leave to assert in an amended complaint any facts suggesting that he was subject to discrimination because of his disability. If Plaintiff chooses to plead a disability based claim under the Rehabilitation Act, he must allege facts satisfying the pleading standards discussed above, including identifying his alleged disability, and showing that equitable tolling should apply. Plaintiff should also note that the appropriate defendant for his Rehabilitation Act claim would be the government entity that he alleges violated his rights. [10]

### D. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts suggesting viable claims, the Court grants Plaintiff 60 days' leave to replead his claims in an amended complaint. Specifically, Plaintiff is granted leave to submit an amended complaint in which he allege facts: (1) showing that he exhausted a claim under the FTCA against the United States by filing an administrative claim with the appropriate agency; (2) in support of a Rehabilitation Act claim arising from the officers' alleged failure to accommodate his disability or otherwise discriminatory conduct during the incident at the 40 Foley Square courthouse; (3) in support of state law claims against CSOs or their private employer; and (4) suggesting that his untimely claims should be equitably tolled.

**\*7** Plaintiff is granted leave to amend his complaint to assert viable claims. In the "Statement of Claim" section of the section amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief and is timely filed. That information should include:

  a) the names and titles of all relevant people;

  b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and

time of each event, and the general location where each event occurred;

   c) a description of the injuries Plaintiff suffered; and

   d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wants to include from the complaint must be repeated in the amended complaint.

Plaintiff may consider contacting the New York Legal Assistance Group's ("NYLAG") Clinic for Pro Se Litigants in the Southern District of New York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves in civil lawsuits in this court. The clinic is run by a private organization; it is not part of, or run by, the court. It cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit. A copy of the flyer with details of the clinic is attached to this order.

## CONCLUSION

The Court construes Plaintiff's claims as brought against the United States, and directs the Clerk of Court to replace Defendant Federal Police Department with the United States of America under Fed. R. Civ. P. 21.

The Court dismisses the complaint for failure to state a claim and as barred under the doctrine of sovereign immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court grants Plaintiff 60 days' leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as a "Amended Complaint," and label the document with docket number 23-CV-7421 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good

cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment consistent with this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Attachment



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____   _____CV_____
Write the full name of each plaintiff.   (include case number if one has been assigned)

-against-   AMENDED

COMPLAINT

_____   Do you want a jury trial?
   ☐ Yes   ☐ No

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 2/10/17

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐  **Federal Question**

☐  **Diversity of Citizenship**

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
            (Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
             (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name | |
|---|---|---|---|

| Street Address | | | |
|---|---|---|---|

| County, City | | State | Zip Code |
|---|---|---|---|

| Telephone Number | | Email Address (if available) | |
|---|---|---|---|

Page 3

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Page 4

Defendant 4:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____
_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____

Page 6

**V. PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|

| First Name | Middle Initial | Last Name |
|---|---|---|

| Street Address | | |
|---|---|---|

| County, City | | State | | Zip Code |
|---|---|---|---|---|

| Telephone Number | | Email Address (if available) |
|---|---|---|

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes  ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

### Free Legal Assistance for Self-Represented Civil Litigants in Federal District Court for the Southern District Of New York

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students and paralegals to assist those who are representing themselves or planning to represent themselves in civil lawsuits in the Southern District of New York. The clinic does not provide full representation. The clinic, which is not part of or run by the court, assists litigants with federal civil cases including cases involving civil rights, employment discrimination, labor law, social security benefits, foreclosure and tax.

**To Contact the Clinic:**

Call (212) 659-6190 or complete our online intake form (found here: https://tinyurl.com/NYLAG-ProSe-OI). A staff member will contact you within a few business days.

Those looking for assistance can also contact the clinic at the kiosk located across the hall from the pro se clinic office in the courthouse.

**At this time, the clinic offers remote consultations only. Requests for in-person appointments will be reviewed on a case-by-case basis.**

**Location and Hours:**

Thurgood Marshall United States Courthouse

Room LL22
40 Foley Square
New York, NY 10007
(212) 659 6190

Open weekdays
10 a.m. – 4 p.m.
Closed on federal and court holidays

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.



### All Citations

Slip Copy, 2023 WL 6610762

---

## Footnotes

1    The Court quotes from the complaint verbatim, and all spelling, grammar, and punctuation are as in the original, unless noted otherwise.

2    Plaintiff filed a separate complaint against the federal courthouse and Judge Valerie Caproni arising from the same January 2018 incident. *Ruiz v. U.S. Fed. Courthouse 40 Foley Square #104*, ECF 1:23-CV-7416, 1 (S.D.N.Y. filed Aug. 18, 2023). He also recently filed four other *pro se* complaints. *See Ruiz v. Parkchester Pub. Safety Dep't*, ECF 1:23-CV-7423, 1 (S.D.N.Y. filed Aug. 21, 2023); *Ruiz v. City of New York Comm'n on Hum. Rts.*, ECF 1:23-CV-7422, 1 (S.D.N.Y. filed Aug. 21, 2023); (S.D.N.Y. filed Aug. 18, 2023); *Ruiz v. HJ Family Corp.*, ECF 1:23-CV-7385, 1 (UA) (S.D.N.Y. filed Aug. 18, 2023); *Ruiz v. N.Y.C. Police Dep't, 43rd Pct.*, ECF 1:23-CV-7386, 1 (S.D.N.Y. filed Aug. 18, 2023) Plaintiff also filed an employment discrimination case in this court that was recently dismissed. *See Ruiz v. Keratin Bar*, ECF 1:17-CV-2216, 182 (S.D.N.Y. Aug. 10, 2023) (dismissing complaint without prejudice for failure to prosecute).

3    Security at the entrance of federal courthouses is normally provided by CSOs, who are employed by private security companies. *See* https://www.usmarshals.gov/what-we-do/judicial-security (last visited Sept. 5, 2023) ("Are the security officers who staff the entrance of the federal courthouse deputy U.S. Marshals? No. The entrance station of a federal courthouse is staffed by Court Security Officers (CSOs), highly-trained men and women who are employed by private security companies awarded a security contract by the U.S. Marshals Service.").

4    To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006)* (citing *Bivens, 403 U.S. at 389*).

5    The United States Supreme Court has recognized implied causes of action under *Bivens* in three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens, 403 U.S. 388 (1971)*; (2) employment discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman, 442 U.S. 228 (1979)*; and (3) inadequate medical treatment of a convicted prisoner under the Eighth Amendment, *Carlson v. Green, 446 U.S. 14 (1980)*. After deciding these three cases, the Supreme Court "made [it] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017)*, and that a *Bivens* remedy is not available, "where there are 'special factors counselling hesitation in the absence of affirmative action by Congress,' " *Hernandez v. Mesa, 137 S. Ct. 2003, 2006 (2017)* (quoting *Carlson, 446 U.S. at 18*). Under *Ziglar*, unless a *Bivens* claim bears some resemblance to one of the three types of *Bivens* claims previously recognized by the Supreme Court, a court must hold that the claim constitutes a new *Bivens* context. *137 S. Ct. 1843, 1860 (2017)*. More recently, the Supreme Court held that, even if a court finds that a case presents "parallel circumstances" with the three prior cases recognizing a *Bivens* remedy, a court may not find a *Bivens* remedy unless it also decides that there is no rational reason to think that Congress is better equipped to create such a remedy. *See Egbert v. Boule, 142 S. Ct. 1793, 1805 (2022)* (holding in the context of a Fourth Amendment claim under Bivens that "superficial similarities are not enough to support the judicial creation of a cause of action").

     "Courts have consistently found that excessive force cases arising under either the Fifth or Eighth Amendment to present new *Bivens* contexts." *Edwards v. Gizzi, No. 20-CV-7371, 2022 WL 309393, at *6 (S.D.N.Y. Feb. 2, 2022)* (holding that plaintiff's excessive force claim against Deputy U.S. Marshals for breaking his arm in the courtroom amidst sentencing hearing presented a new *Bivens* context "whether it arises under the Fifth or Eighth Amendment"); *see also Rivera v. Samilo, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019)* (holding that an excessive force claim stemming from a lawful arrest is sufficiently different from Fourth Amendment claim

arising from a home search); *Ramirez v. Tatum*, No. 17-CV-7801, 2018 WL 6655600, at *5 (S.D.N.Y. Dec. 19, 2018) (declining to find *Bivens* remedy where the plaintiff, a pretrial detainee, alleged that correctional officers used excessive force when transporting him from the hospital to the jail).

6    *Bivens* does not authorize suit against a private corporation or its employees – even corporations that perform traditionally governmental functions. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) (declining to infer a *Bivens* remedy "for damages against private entities acting under color of federal law"); *Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (courts cannot "imply the existence of an Eighth Amendment-based damages action (a *Bivens* action) against employees of a privately operated federal prison.").

If Plaintiff seeks to bring claims against CSOs or their employer, a private entity hired as a federal contractor by the USMS, his claims likely cannot proceed under *Bivens*. *See Komatsu v. United States*, No. 21-CV-1838, 2023 WL 317326, at *6 (S.D.N.Y. Jan. 19, 2023) (claims asserted against privately employed CSOs and their employer cannot proceed under *Bivens*). Alternatively, if Plaintiff seeks to bring state law tort claims such as assault and battery against CSOs and their employer and has another viable federal claim, the Court could exercise supplemental jurisdiction of such claims under 28 U.S.C.§ 1367.

7    Though, typically, "the *Bivens* question ... is 'antecedent' to the other questions presented," *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (citing *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014)), the Supreme Court has endorsed "disposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy," *id.* at 2007.

8    Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the case is timely filed. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *see also Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds). A district court should generally grant notice and opportunity to be heard, however, before dismissing a complaint *sua sponte* on statute of limitations grounds. *Abbas*, 480 F.3d at 640.

9    The doctrine of equitable tolling permits a court, "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) (quoting *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 233 (2d Cir. 2000)). The statute of limitations may be equitably tolled when a defendant fraudulently conceals from a plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the defendant to forego a lawsuit until the statute of limitations has expired. *See Pearl*, 296 F.3d at 82-83. New York also provides by statute for other circumstances in which a limitations period may be tolled. *See, e.g.*, N.Y. C.P.L.R. §§ 204, 204(a), 207(3), 208.

10   Courts have held that the Rehabilitation Act does not provide for liability of individuals in their individual capacities. *See, e.g.*, *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 32 of 83

Phipps v. United States, Not Reported in Fed. Supp. (2021)

2021 WL 5534701
Only the Westlaw citation is currently available.
United States District Court, N.D. West Virginia.

Herbert PHIPPS, Plaintiff,
v.
UNITED STATES of America Defendant.

Civil Action No. 1:21cv105
|
Signed 08/16/2021

**Attorneys and Law Firms**

Herbert Phipps, Bruceton Mills, WV, Pro Se.

**REPORT AND RECOMMENDATION**

MICHAEL JOHN ALOI, UNITED STATES MAGISTRATE
JUDGE

### I. Introduction

 *1  On July 30, 2021, the *pro se* Plaintiff, an inmate at
USP Hazelton in Bruceton Mills, West Virginia initiated this
case by filing a complaint pursuant to the Federal Tort Claim
Act ("FTCA"). ECF No. 1. With his complaint, Plaintiff
filed a Motion for Leave to Proceed in Forma Pauperis with
supporting documents. ECF Nos. 2, 3, 4.

This matter is before the undersigned for an initial review and
report and recommendation pursuant to LR PL P 2, and 28
U.S.C. § 1915(A).

### II. The Complaint

In his complaint, Plaintiff alleges that on February 12, 2018,
he was sent on a writ to Terre Haute, Indiana, but that in order
to get there, had to go to the Bureau of Prisons' ("BOP")
Oklahoma Transfer Center, where he arrived on March 28,
2018 [ECF No. 1 at 6; elsewhere, Plaintiff states he arrived
on March 23, 2018. See ECF No. 1-1 at 4]. However, because
the BOP transit center was overcrowded, he was sent to a
"subcontracted prison of the FBOP Grady County Jail" in
Chickasha, Oklahoma. ECF No. 1-1 at 4. He contends that as
he stepped off the BOP's bus, he was instructed to step down

on a "log of wood" that was "faulty and dangerous," and he
fell, injuring his back and legs and hitting his head. Id. He
avers that he still has "extreme pain and discomfort" and now
has constant trembling in his hands. Id. Plaintiff contends he
now suffers from post-traumatic stress disorder ("PTSD") and
depression, and is nowhere near as active as he formerly was,
and that he is now afraid to step up/down off any object, steps,
or obstacles. ECF No. 1 at 9.

Plaintiff's complaint indicates that he filed a Standard Form
95 administrative tort claim, but in response to the question
asking him to identify the type of written claim he filed,
he stated "BP-11 to Central Office – WDC" on March 1,
2021. Id. at 4. Attached to Plaintiff's complaint are copies of
administrative grievances filed with responses thereto [ECF
Nos. 1-1 at 1 – 33], but Plaintiff did not attach a copy of any
Standard Form 95 administrative tort claim nor a copy of any
denial letter for the same. As relief, he seeks $2,000,000.00
for the "permanent" damaged incurred in the fall. ECF No.
1 at 9.

### III. Standard of Review

Because Plaintiff is a prisoner seeking redress from a
governmental entity or employee, the Court must review the
complaint to determine whether it is frivolous or malicious.
Pursuant to 28 U.S.C. § 1915A(b), the Court is required to
perform a judicial review of certain suits brought by prisoners
and must dismiss a case at any time if the Court determines
that the complaint is frivolous, malicious, fails to state a claim
upon which relief can be granted, or seeks monetary relief
against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either
in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325
(1989). However, the Court must read *pro se* allegations
in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520
(1972). A complaint which fails to state a claim under Fed. R.
Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke,
490 U.S. at 328. Frivolity dismissals should only be ordered
when the legal theories are "indisputably meritless," [1]  or
when the claims rely on factual allegations which are "clearly
baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This
includes claims in which the plaintiff has little or no chance
of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

**\*2** It is well-established that the United States is immune from suit unless it consents to be sued. See United States v. Testan, 424 U.S. 392 (1976). However, the FTCA waives the federal government's traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). Specifically, "[t]he statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Nonetheless, the FTCA only waives the government's sovereign immunity if certain terms and conditions are met. Honda v. Clark, 386 U.S. 484 (1967). One of those conditions is that an FTCA action be filed within two years of the incident or within six months of the final claim denial. 28 U.S.C. § 2401(b). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-2680.

The failure of a plaintiff to exhaust his administrative remedies prior to filing suit deprives a court of subject matter jurisdiction. See McNeil v. United States, 508 U.S. 106 (1993); Plyer v. United States, 900 F.2d 41 (4th Cir. 1990). In addition, a court is not allowed to hold the case in abeyance until a plaintiff presents an administrative tort claim with the appropriate agency, and the six-month time period expires. See 28 U.S.C. § 2675. As the Fourth Circuit noted, "[s]ince the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired." Plyer, 900 F.2d at 42 (citation omitted).

Here, Plaintiff has attached to his complaint a copy of an April 26, 2021 letter from "Counselor W. Barr D-1," "to whom it may concern," averring that Plaintiff was "on a Federal Writ from USP Hazelton Starting January 30, 2018 until April 2, 2018." ECF No. 1-1 at 18.

Plaintiff states that upon his return to USP Hazelton in November 2019, he "immediately" filed a BP-8, but that no

response ever came back for (2) years running? That's when on 3/1/21 I decided to follow it up with a BP-9 with USP Hazelton's warden. Again no response was ever given on the BP-9

as well. So, on April 8, 2021, I filed a BP-10 to the Southeast Region of the FBOP. There [sic] response came back April 13, 2021. Their excuse was that they denied the BP-10, because I never filed a BP-8 or BP9?

See ECF No. 1-1 at 5. Plaintiff avers that he filed a BP-8, a BP-9, a BP-10, and a BP-11. See ECF No. 1 at 3. Plaintiff attaches a November 27, 2019 Informal Resolution form (BP-8), alleging the fall at the Grady County Jail; saying he hurt his legs, lower and upper back, and that his hands tremble all the time now because of "nerve damage.' ECF No. 1-1 at 28. Next, he attaches another BP-8 Informal Resolution form, this one dated April 26, 2021, raising the claim again. ECF No 1-1 at 29. He received an April 28, 2021 response from staff, saying "**Counselor states file tort claim. Must file tort claim.**" ECF No. 1-1 at 30 (emphasis added). Plaintiff also attaches a March 1, 2021 BP-9 that was received by the Warden on April 4, 2021 and assigned Remedy ID 1078749-F1. ECF No. 1-1 at 32. He attaches an April 29, 2021 Rejection Notice, saying his Remedy ID 1078749-F1 request for monetary damage is denied but that "**you may submit a tort claim for monetary compensation**, but this incident did not occur at a BOP facility." ECF No. 1-1 at 17 (emphasis added). Plaintiff also attaches an undated Central Office Administrative Remedy Appeal that includes no response [ECF No. 1-1 at 11] and a copy of a May 11, 2021 Regional Administrative Remedy Appeal. See ECF No. 1-1 at 19. The response to it is blank and/or illegible. See ECF No. 1-1 at 20.

**\*3** Although Plaintiff filed administrative grievances, there is no evidence in the record to show that Plaintiff ever presented a Standard Form 95 administrative tort claim to the appropriate agency within two years from the date of the event, the initial requisite to proceed on a FTCA claim. The *pro se* law clerk assigned to this case contacted the BOP on August 2, 2021 and received verification that Plaintiff never filed a Standard Form 95 over the claims at issue in the complaint.

Plaintiff's fall occurred on either March 23, 2018 or March 28, 2018; as such, he was required to file a Standard Form 95 administrative tort claim within two years of either of those dates, or by March 23, 2020 or March 28, 2020. This he failed to do, despite having been twice advised in the denials of his administrative remedies that he needed to "file

a tort claim." See ECF No. 1-1 at 30; see also ECF No. 1-1 at 17. Had he submitted a Standard Form 95 administrative tort claim as required and received a final denial letter, he would then have had six months from the date of the denial to bring suit in federal court. [2] However, Plaintiff never filed a Standard Form 95 administrative tort and did not initiate the instant action until July 30, 2021. Therefore, Plaintiff's claim is clearly time-barred.

Because the FTCA waives the United States traditional grant of sovereign immunity, the statute must be strictly construed. United States v. Kubrick, 444 U.S. 111, 117B18 (1979). Put simply, because the United States may not be sued without its permission, the Court may not take it upon itself "to extend the waiver beyond that which Congress intended." Id. Therefore, "[i]f an action is not filed as the statute requires, the six-month time period may not be extended" by the Court. Tuttle v. United States Postal Service, 585 F.Supp. 55 (M.D. Pa. 1983) (citing United States v.Kubrick 444 U.S. 111, 117B18)).

The undersigned recognizes that the United States Supreme Court has held that the FTCA's statute of limitations is a procedural, not jurisdictional bar. United States v. Kwai Fun Wong, 135 S.Ct. 1625, 1627 (2015). Accordingly, equitable tolling is applicable to FTCA's statute of limitation. However, equitable tolling in suits against the United States is only available in exceptional circumstances. See Muth v. United States, 1 F.3d 246, 251 (4th Cir. 1993). More specifically, the Fourth Circuit has stated that equitable tolling principles are appropriate only "where the defendant has wrongfully deceived or mislead the plaintiff in order to conceal the existence of a cause of action." Kokotis v. United States Postal Service, 223 F.3d 275, 280B81 (4th Cir. 2000) (quoting English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987)).

Nonetheless, here, the BOP twice clearly informed Plaintiff that he needed to file a tort claim to proceed. Plaintiff was not misled by the agency, nor did the agency make any misrepresentations. Plaintiff's lack of diligence in filing a Standard Form 95 administrative tort claim within the requisite two-year time period of his injury does not comport with a finding of equitable tolling. Because he never filed a Standard Form 95 administrative tort claim, this Court lacks subject matter jurisdiction over his claims. The plaintiff bears the burden of establishing this court's jurisdiction to entertain his FTCA. However, the record, including the exhibits submitted to the Court with Plaintiff's complaint do not support a finding that he submitted a Standard Form 95

administrative tort claim within two years of the date of his injury. Rather, the weight of the evidence establishes that he never submitted such a claim at all. Therefore, not only are his claims untimely, this Court lacks jurisdiction to consider his FTCA.

## V. Recommendation

**\*4** In consideration of the foregoing, it is the undersigned's recommendation that Plaintiff's complaint under the FTCA be **DISMISSED without prejudice** because this Court lacks subject matter jurisdiction and further, the claims are barred by the statute of limitations. It is further recommended that Plaintiff's Motion to Proceed in forma pauperis [ECF No. 2] be **DENIED as moot.**

The plaintiff shall **have fourteen days from the date of entry of this Report and Recommendation** within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the pro se plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

## All Citations

Not Reported in Fed. Supp., 2021 WL 5534701

Phipps v. United States, Not Reported in Fed. Supp. (2021)

Case 1:24-cv-00970-AMN-ML     Document 5     Filed 01/07/25     Page 35 of 83

**Footnotes**

1    Id. at 327.

2    Title 28 U.S.C. '2401(b) specifically states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun *within six months after the date of mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4739497

Only the Westlaw citation is currently available.

United States District Court, N.D. West Virginia, Clarksburg.

Herbert PHIPPS, Plaintiff,

v.

UNITED STATES of America, Defendant.

CASE NO: 1:21-CV-105

|

Signed 10/12/2021

**Attorneys and Law Firms**

Herbert Phipps, Bruceton Mills, WV, Pro Se.

## ORDER ADOPTING REPORT AND RECOMMENDATION

JOHN PRESTON BAILEY, UNITED STATES DISTRICT JUDGE

**\*1** The above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge Michael John Aloi [Doc. 7]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Aloi for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Aloi filed his R&R on August 16, 2021, wherein he recommends the plaintiff's complaint under the FTCA be dismissed without prejudice. For the reasons that follow, this Court will adopt the R&R.

## STANDARDS OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Nor is this Court required to conduct a *de novo* review when the party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and

recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982).

In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour,* 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984). *Pro se* filings must be liberally construed and held to a less stringent standard than those drafted by licensed attorneys, however, courts are not required to create objections where none exist. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1971).

Here, objections to Magistrate Judge Aloi's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure. Plaintiff filed his Objections to the R&R [Doc. 9] on September 7, 2021. Accordingly, this Court will review the portions of the R&R to which objection was filed under a *de novo* standard of review. The remainder of the R&R will be reviewed for clear error.

## BACKGROUND

In his complaint, plaintiff alleges that on February 12, 2018, he was sent on a writ to Terre Haute, Indiana, but that in order to get there, he was first transported to the BOP Oklahoma Transfer Center. [Doc. 1 at 6]. However, because the BOP transit center was overcrowded, plaintiff was sent to a "subcontracted prison of the FBOP Grady County Jail" in Chickasha, Oklahoma. [Doc. 1-1 at 4]. Plaintiff contends that as he stepped off the BOP's bus, he was instructed to step down on a "log of wood" that was "faulty and dangerous," and he fell, injuring his back, legs, and head. [Id.]. Plaintiff avers he still suffers from "extreme pain and discomfort" and now has constant trembling in his hands. [Id.]. Further, he contends he now suffers from PTSD and depression, has lost activity levels, and has fear to ambulate on steps or obstacles. [Doc. 1 at 9].

**\*2** Plaintiff's complaint indicates that he filed a Standard Form 95 administrative tort claim. [Id. at 4]. However, plaintiff did not attach a copy of any Standard Form 95 administrative tort claim, nor a copy of any denial letter concerning the same. Plaintiff seeks $2,000,000.00 for relief. [Id. at 9].

## DISCUSSION

Here, Magistrate Judge Aloi found that although plaintiff had filed administrative grievances, there is no evidence in the record to show that plaintiff ever presented a Standard Form 95 administrative tort claim to the appropriate agency within two years from the date of plaintiff's alleged injury–the prerequisite to proceed on an FTCA claim. In fact, the *pro se* law clerk assigned to this case contacted the BOP on August 2, 2021, and received verification that plaintiff never filed a Standard Form 95 concerning the claims at issue in the complaint. As such, Magistrate Judge Aloi ultimately concluded that plaintiff's claims were not only untimely, but that this Court lacks jurisdiction to consider the FTCA complaint due to plaintiff's failure to exhaust. *See* [Doc. 7 at 4–7].

In his objections, plaintiff admits he never filed a Standard Form 95 concerning the claims at issue. [Doc. 9 at 1]. By way of explanation for his failure to exhaust, plaintiff avers that he is a "layman unlettered to the law" and asks this Court to excuse the fact that plaintiff did not exhaust the prerequisite administrative remedies required to pursue his claims. [Id.].

This Court cannot do so in these circumstances. Plaintiff's fall occurred in March 2018. As such, he was required to file a Standard Form 95 administrative tort claim within two years. Had he submitted a Standard Form 95 administrative tort claim as required and received a final denial letter, he would then have had six months from the date of the denial to bring suit in federal court. However, plaintiff did not file a Standard Form 95 administrative tort claim and did not initiate the instant action until July 30, 2021.

Because the FTCA waives the United States' traditional grant of sovereign immunity, the statute must be strictly construed. *United States v. Kubrick*, 444 U.S. 111, 117–18 (1979). Put simply, because the United States may not be sued without its permission, the Court may not take it upon itself "to extend the waiver beyond that which Congress intended." *Id.*

Moreover, equitable tolling in suits against the United States is only available in exceptional circumstances. *See Muth v. United States*, 1 F.3d 246, 251 (4th Cir. 1993). More specifically, the Fourth Circuit has stated that equitable tolling principles are appropriate only "where the defendant has wrongfully deceived or mislead the plaintiff in order to conceal the existence of a cause of action." *Kokotis v. United*

*States Postal Service*, 223 F.3d 275, 280–81 (4th Cir. 2000) (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). Here, as noted by Magistrate Judge Aloi, the BOP actually informed plaintiff that he needed to file a tort claim to proceed on two occasions. *See* [Doc. 7 at 6]. For these reasons, upon review of plaintiff's objections even when construing them with a deferential view benefitting the *pro se* litigant, plaintiff's objections must be overruled.

## CONCLUSION

Having found no clear error in the remainder of the magistrate judge's well-reasoned review of the pleadings, plaintiff's objections **[Doc. 9]** are **OVERRULED**, and it is the opinion of this Court that the Report and Recommendation **[Doc. 7]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Accordingly, this Court **ORDERS** that the complaint **[Doc. 1]** be **DENIED** and **DISMISSED WITHOUT PREJUDICE.**

**\*3** Further, plaintiff's Motion to Proceed *in forma pauperis* **[Doc. 2]** is **DENIED AS MOOT.**

This Court further directs the Clerk to **STRIKE** this matter from the active docket of this Court.

It is so **ORDERED.**

Attachment



**All Citations**

Not Reported in Fed. Supp., 2021 WL 4739497

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 508497
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Omran JAGHAMA, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 11–cv–5826.
|
Feb. 11, 2013.

**Attorneys and Law Firms**

Marina Trubitsky, Law Office of Marina Trubitsky, New York, NY, for Plaintiff.

Timothy D. Lynch, United States Attorneys Office, Brooklyn, NY, for Defendant.

### ORDER

GERSHON, District Judge.

**\*1** Plaintiff seeks to recover damages from the United States [1] for personal injuries sustained in an automobile collision with a United States Department of Justice ("DOJ") vehicle. Defendant has moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, asserting that plaintiff failed to comply with the jurisdictional prerequisites set forth in the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. §§ 1346(b), 2401(b), and 2671–80. For the reasons set forth below, defendant's motion to dismiss is granted.

### FACTS

The following facts are alleged in the Complaint and are accepted as true for the purposes of this motion:

On June 11, 2008, Jonathan May, an employee of the United States Department of Justice, was driving a government-owned vehicle on Staten Island. Because of negligence by both May and the DOJ, May's vehicle collided with a motor vehicle driven by the plaintiff. As a result, plaintiff suffered physical and economic injuries.

Plaintiff subsequently filed a lawsuit in the New York Supreme Court, Kings County, on June 10, 2011. Defendant removed the case to this court on November 30, 2011.

Plaintiff's complaint is silent with respect to the exhaustion of administrative remedies. In opposition to the motion to dismiss, plaintiff proffers a completed administrative tort claim standard form ("SF–95"). The form, dated August 22, 2008, states the basis of the claim, the nature of the injury, the amount of damages claimed for personal injury, and is addressed to "OSJA Claims, Attn: Torts–B, Bldg 275, 1336 Plummer St., Monterey, CA 93944–3327." Plaintiff represents in his reply brief that this form was mailed to the DOJ at this address on March 22, 2010, but he provides no return receipt or other evidentiary confirmation that this form was mailed or received.

Defendant submitted a declaration from a DOJ paralegal who is responsible for reviewing administrative claims made to the DOJ. It submitted a second declaration from an attorney with the Department of the Army, responsible for reviewing and processing all claims that are submitted to the office listed on plaintiff's SF–95. Both declarations state that, after review, the files at their respective agencies contain no record of a notice of claim from plaintiff.

### DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). In considering a motion to dismiss under Rule 12(b)(1), the court must take as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000). Where a question of subject matter jurisdiction turns on a factual issue, however, a district court may refer to evidence outside the pleadings. *Makarova,* 201 F.3d at 113. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Id.*

**\*2** The United States, as sovereign, " 'is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Id.* (quoting *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)).

The doctrine of sovereign immunity is jurisdictional in nature. *Id.* The FTCA waives the sovereign immunity of the United States for certain classes of tort claims. *See Celestine v. Mount Vernon Neighborhood Health Center,* 403 F.3d 76, 80 (2d Cir.2005). The FTCA provides the federal district courts with exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. *Id.* As a prerequisite to federal court jurisdiction, the FTCA requires complete exhaustion of administrative remedies by a claimant. The statute provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). A claimant may not institute a lawsuit "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a); *see also* 28 C.F.R. § 14.2(a) ("For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant ... an executed Standard Form 95 ....").

Defendant contends here that plaintiff failed to present a timely notice of claim to the DOJ. Plaintiff points to the proffered SF–95, purportedly mailed on March 22, 2010, and argues that, if defendant cannot find "the appropriate record, an issue of fact is created." Plaintiff is incorrect.

A plaintiff must provide proof that his notice of claim was received by the appropriate agency in the time and manner prescribed by the FTCA or its implementing regulations. *Pinchasow v. United States,* 408 F.Supp.2d 138, 143 (E.D.N.Y.2006), *aff'd* 2006 WL 3370714 (2d Cir.2006); *see Torres v. United States,* 2008 WL 2157124, *3 (E.D.N.Y.2008) (majority view among district courts in

Second Circuit requires actual proof of receipt of notice). Plaintiff here has not done so. He offers no proof of actual receipt of the notice of claim by the DOJ. Indeed, plaintiff offers less than what was held to be insufficient in *Pinchasow. Id.* at 142–43. In *Pinchasow,* the plaintiff failed to satisfy the FTCA's presentment requirement despite proffering an affidavit that the notice of claim was timely sent via regular mail to the appropriate agency. *Id.* at 143. Plaintiff here provides only a copy of the SF–95, dated August 22, 2008, along with a representation in his brief that the form was mailed to the DOJ on March 22, 2010. He offers no evidence, by declaration or otherwise, that the form was actually mailed on March 22, 2010, much less received on time by the DOJ.

**\*3** Although the failure to provide actual proof of receipt is sufficient to grant the defendant's motion to dismiss, other circumstances cast further doubt on whether the DOJ received timely notice. More than eighteen months passed between the date indicated on the form and the date of the purported mailing, and the face of the form suggests that it may have been sent, if at all, to the wrong agency. Contrary to plaintiff's suggestion, there is no issue of fact—it is he, and not the defendant, who must show the existence of subject matter jurisdiction by demonstrating that he has exhausted his administrative remedies, and he has failed to do so.[2] *See Makarova,* 201 F.3d at 113.

## CONCLUSION

For these reasons, plaintiff has not demonstrated that he has exhausted his administrative remedies as required by the FTCA, and therefore has not established that subject matter exists here. Defendant's motion to dismiss is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 508497

## Footnotes

1    Initially, plaintiff named two defendants in this action: Jonathan B. May and the DOJ. Because the United States Attorney's Office for the Eastern District of New York certified that Mr. May was a DOJ employee acting

within the scope of his employment at the time of the incident, the United States has been substituted as the defendant in May's place. 28 U.S.C. § 2679(d)(1); 28 C.F.R. 15.4. Plaintiff does not oppose the substitution.

2      Even if plaintiff's evidence created a rebuttable presumption of DOJ's receipt, here, as in *Pinchasow,* defendant has provided sufficient evidence to rebut the presumption. *See id.,* 408 F.Supp.2d at 143; *see Vecchio v. United States,* 2005 WL 2978699, *3 (S.D.N.Y.2005) (questioning whether proof of mailing creates a rebuttable presumption of receipt). It submitted two declarations, each stating that neither the DOJ nor the Department of the Army, where plaintiff's claim was purportedly mailed, contained a record of receipt of plaintiff's notice of claim.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 3370714

Only the Westlaw citation is currently available.

This case was not selected for
publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.

Gary M. PINCHASOW, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee,

United States Postal Service, Aaron Fletcher, Defendants.

No. 06-1139-CV.

|

Nov. 20, 2006.

Appeal from the United States District Court for the Eastern
District of New York (Gershon, J.).

**Attorneys and Law Firms**

Barry Richard Feldman, Brooklyn, NY, for Plaintiff-
Appellant.

Orelia E. Merchant, Assistant United States Attorney (Varuni
Nelson, Assistant United States Attorney, on the brief), for
Roslynn R. Mauskopf, United States Attorney for the Eastern
District of New York, Brooklyn, NY, for Defendant-Appellee.

Present ROBERT A. KATZMANN, RICHARD C.
WESLEY, PETER W. HALL and Circuit Judges.

## SUMMARY ORDER

**\*1  ON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED.**

Plaintiff Gary Pinchasow seeks review of the district court's
grant of a motion to dismiss for lack of subject matter

jurisdiction. We assume the parties' familiarity with the
underlying facts and procedural history of the case.

We review the district court's dismissal for lack of subject
matter jurisdiction *de novo. Celestine v. Mount Vernon
Neighborhood Health Ctr.,* 403 F.3d 76, 79-80 (2d Cir.2005).
At issue in this case is whether plaintiff has exhausted his
administrative remedies, as is required before commencing an
action against the United States under the Federal Tort Claims
Act ("FTCA"). *McNeil v. United States,* 508 U.S. 106, 107
(1993). A claim is "deemed to have been presented when a
Federal agency receives from a claimant, his duly authorized
agent or legal representative, an executed Standard Form 95
or other written notification of an incident, accompanied by a
claim for money damages in a sum certain for injury to or loss
of property, personal injury or death alleged to have occurred
by reason of the incident." 28 C.F.R. § 14.2.

Pinchasow never presented "written notification"
accompanied by a claim for "damages in a sum certain."
His June 27, 2002 summons and complaint in the Supreme
Court of the State of New York, County of Queens, did
not constitute such notice because court documents alone do
not notify the agency that a claimant seeks administrative
relief. *Cf. McNeil,* 508 U.S. at 112. Furthermore, Pinchasow's
September 22, 2001 letter to the United States Postal Service
informing it that Pinchasow intended to bring an action for
personal injuries did not name a "sum certain." Even if it
provided notice of the incident, as Pinchasow argues, it was
not "accompanied" by a specific claim for damages as found
in the summons and complaint, which was filed over ten
months later.

We have considered all of the plaintiff-appellant's remaining
arguments and find them to be without merit. The judgment
of the district court is therefore **AFFIRMED.**

**All Citations**

Slip Copy, 2006 WL 3370714

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 6381428
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri, Eastern Division.

Clint PHILLIPS, III, Plaintiff,
v.
UNITED STATES, et al., Defendants.

No. 4:23-CV-1209 SPM
|
Signed September 28, 2023

**Attorneys and Law Firms**

Clint Phillips, III, St. Louis, MO, Pro Se.

**OPINION, MEMORANDUM AND ORDER**

HENRY EDWARD AUTREY, UNITED STATES
DISTRICT JUDGE

**\*1** This matter is before the Court upon the motion of
plaintiff Clint Phillips, for leave to proceed in forma pauperis
in this civil action. Upon consideration of the motion and the
financial information provided therein, the Court concludes
that plaintiff is unable to pay the filing fee. The motion will
therefore be granted. Additionally, for the reasons discussed
below, the Court will order plaintiff to show cause why this
action should not be dismissed.

**Legal Standard on Initial Review**

This Court is required to review a complaint filed *in
forma pauperis* to determine whether summary dismissal is
appropriate. *See* 28 U.S.C. § 1915(e). This Court must dismiss
a complaint or any portion of it that states a frivolous or
malicious claim, that fails to state a claim upon which relief
may be granted, or that seeks monetary relief from a defendant
who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).
An action fails to state a claim upon which relief may be
granted if it does not plead "enough facts to state a claim
to relief that is plausible on its face." *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 570 (2007). An action is frivolous
if it "lacks an arguable basis in either law or fact." *Neitzke v.
Williams*, 490 U.S. 319, 328 (1989).

The term " 'frivolous,' when applied to a complaint, embraces
not only the inarguable legal conclusion, but also the fanciful
factual allegation." *Id.* While federal courts should not
dismiss an action commenced *in forma pauperis* if the facts
alleged are merely unlikely, the court can properly dismiss
such an action if the plaintiff's allegations are found to be
clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33
(1992). Allegations are clearly baseless if they are "fanciful,"
"fantastic," or "delusional," or if they "rise to the level of the
irrational or the wholly incredible." *Id.*

**Plaintiff's History with the Court**

Plaintiff is a frequent pro se and in forma pauperis litigator
in this Court. [1] He describes himself as suffering from
Post-Traumatic Stress Disorder (PTSD) and Schizophrenia.
*See Phillips v. Three Unknown Police Officers*, No. 4:19-
CV-2922 RLW (E.D. Mo. filed Oct. 25, 2019). In this Court's
dismissal of a case plaintiff filed in 2022, the Court warned
him that the filing of frivolous lawsuits is an abuse of the
litigation process. *See Phillips v. St. Louis County*, No. 4:22-
CV-759 JAR (E.D. Mo. issued Oct. 19, 2022). Based on a
review of Court records, since that warning from the Court,
plaintiff filed at least seven (7) additional cases. Three of
those cases are currently pending with the Court.

**The Complaint**

**\*2** Plaintiff Clint Phillips filed the instant complaint on
September 26, 2023. He names the following as defendants
in this action: the United States of America; the United
States Postal Service; the VA Torts Law Group; and Kyle
Beesley. Plaintiff complains that in 2015 he applied for
disability benefits from the Department of Veterans Affairs
(VA) concerning the disabilities of "erectile dysfunction" and
"akathisia." [2] He claims that he was not "awarded those
benefits" until April 19, 2023, [3] "making the contingency of
erectile dysfunction an official disability, and receiving an
SMC payment under 1114(k) for such, under Title 28 U.S.C.
2680(a), the Discretionary Function Exception." Plaintiff
alleges that he had two years to initiate a claim under the
Federal Tort Claims Act (FTCA). Plaintiff does not specify
when he believes his statute of limitations began.

Specifically, plaintiff's allegation under the FTCA appears
to relate to his belief, which he has previously espoused

Phillips v. United States, Not Reported in Fed. Supp. (2023)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 44 of 83

in this Court, that he was told by his VA doctor, Laura Fuchs, in December of 2015, that his erectile dysfunction and akathisia were side effects of medications allegedly prescribed to him by other VA doctors. Those medications were purportedly: Zyprexa, Haldol, Invega (Sustenna) and Risperidone (Risperdal). *See Phillips v. United States*, No. 4:21-CV-723 AGF (E.D. Mo. 2021).

Plaintiff purports in the current complaint, that he filed an administrative complaint with the VA relative to his FTCA claims, "reinforced with information from VA release of information that stated that [H]aldol and Zyprexa caused me to have 'akathisia' and Invega (Sustenna) caus[ed] sexual side effects ..." He claims that although it took the VA more than eighteen (18) months to answer his administrative complaint, it ended in a "due process violation," as well as *Bivens* claims against several federal actors. Plaintiff, however, has failed to attach the alleged VA administrative complaint, Agency Decision, or provide the Court with any information relative to his VA administrative process regarding his FTCA claims.

Plaintiff asserts that he also filed a claim with the Office of General Counsel of the St. Louis Regional Office for an unnamed agency, presumably the VA, for a "violation of due process rights." Although the private entity, the VA Torts Law Group, told plaintiff that it believed he had a valid claim, his claims were denied by the Office of General Counsel. [4] Although plaintiff claims he sent a motion for reconsideration in the mail, he believes the United States Postal Service discarded the mail making the postal service liable for the loss of his motion for reconsideration. The Court, however, is not entirely sure what plaintiff was purportedly attempting to reconsider.

It appears that plaintiff wishes to sue the United States Postal Service for the loss of his motion for reconsideration to the Office of General Counsel. Additionally, he claims that this Court has jurisdiction over his FTCA claims against the United States despite not providing any information as to his administrative process such as when it occurred, whom he sued (specific defendants) under the FTCA, and whether he litigated the statute of limitations issue in the administrative process. As noted previously, plaintiff has also failed to provide a copy of the Agency Decision to this Court.

*3 Additionally, plaintiff appears to sue the VA Torts Law Group and an individual named Kyle Beesley in this action, although he has not indicated why he is suing this private entity and private individual.

**Discussion**

As set forth above, plaintiff appears to be bringing an action under the FTCA against the United States of America, pursuant to 28 U.S.C. § 2680(a) and (h). He also appears to be suing the United States Postal Service, the VA Torts Law Group and Kyle Beesley under either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). As currently pled, it does not appear that plaintiff has jurisdiction to bring this action in Federal Court, as the Court is unsure that plaintiff has properly exhausted his claims under the FTCA. Additionally, the United States is not the proper party to sue under the FTCA. Moreover, plaintiff fails to state a claim against the remaining defendants. For the following reasons, plaintiff will be required to show cause why this action should not be dismissed.

"Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States may not be sued without its consent"). Thus, to sue the United States, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. Partnership v. Dep't of Housing and Urban Development*, 235 F.3d 1109, 1112 (8th Cir. 2000). Such a waiver must be "unequivocally expressed" and "cannot be implied." *See United States v. King*, 395 U.S. 1, 4 (1969). *See also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (stating that "in the context of federal sovereign immunity ... it is well established that waivers are not implied"). There is no indication that such a waiver is present in this action.

It is true that the Federal Tort Claims Act removes the sovereign immunity of the United States from suits in tort. *See White v. United States*, 959 F.3d 328, 332 (8th Cir. 2020) (explaining that the "FTCA waives sovereign immunity and allows the government to be held liable for negligent or wrongful acts by federal employees committed while acting within the scope of their employment"). To do so, however, the plaintiff must first present his claim in writing to the appropriate Federal Agency within two years after such claim accrues unless the action is begun within six months after the date of mailing, by certified or registered mail, of a notice of final denial of the claim by the Agency to which it was presented. *See* 28 U.S.C. § 2401(b).

In this case, plaintiff states that he filed a tort claim with an administrative agency, presumably with the VA, and that it ended in a "due process violation," as well as *Bivens* claims against several federal actors. Plaintiff, however, has failed to attach the alleged VA administrative complaint, or provide the Court the final Agency Decision made by the VA. To ascertain whether plaintiff is suing the proper parties in this Court or if he is suing in a timely manner, the Court must have the Agency Decision from the VA.

**\*4** Plaintiff should be mindful that the statute of limitations provision in 28 U.S.C. § 2401(b) has been narrowly construed, and a plaintiff must both file his administrative claim within two years after accrual of the claim and file his action in the District Court within six months of the Agency's final action for jurisdiction to be proper. *See Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008); *see also, Barnes v. United States,* 776 F.3d 1134 (10th Cir. 2015). A tort claim under the FTCA accrues "even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury." *Hahn v. United States*, 313 Fed. Appx. 582, 585 (4th Cir. 2008). Plaintiff's tort claims appear to be time-barred, as he states that he learned about the tort claims as early as 2015.

Last, although plaintiff attempts to sue the United States Postal Service, the VA Torts Law Group and an individual named Kyle Beesley in this action, he fails to state a claim regarding these individuals/entities. Plaintiff has not identified who at the postal service he blames for negligently losing his motion for reconsideration in the mail, and he cannot sue under *Bivens* without naming a specific individual and articulating a causal connection between the defendant and the alleged violation of his constitutional rights. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017) (liability in a civil rights case is personal). [5] Similarly, he has failed to identify Kyle Beesley or how he believes Beesley violated his rights. Furthermore, to the extent he believes the VA Torts Law Group acted in some way against him, he cannot suffice to bring a claim against this entity under 42 U.S.C. § 1983 because this entity is not a state actor. [6]

Accordingly, the Court will require plaintiff to show cause why his action should not be dismissed.

### Plaintiff's Motion for Appointment of Counsel

**\*5** Last, the Court will deny plaintiff's motion for appointment of counsel at this time. There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing,* 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson,* 728 F.2d at 1005.

After considering these factors and the factual allegations in the case at hand, the Court finds that the facts and legal issues involved are not so complicated that the appointment of counsel is warranted at this time.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall show cause within twenty-one (21) days of the date of this Memorandum and Order why this action should not be subject to dismissal for lack of jurisdiction and pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that to the extent plaintiff wishes to pursue claims under the Federal Tort Claims Act, he must provide the Court with a copy of his Agency Decision along with his Response to the Order to Show Cause within twenty-one (21) days from the date of this Order.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED**.

### All Citations

Not Reported in Fed. Supp., 2023 WL 6381428

**Phillips v. United States, Not Reported in Fed. Supp. (2023)**

Case 1:24-cv-00970-AMN-ML   Document 5   Filed 01/07/25   Page 46 of 83

## Footnotes

1   Based on a review of Court records, it appears that plaintiff has filed approximately forty-five (45) cases in this Court since 2010. It appears that only one of those cases made it past initial review under 28 U.S.C. § 1915(e)(2); however, that case was dismissed after plaintiff failed to respond to a motion to compel and failed to appear for a hearing. *See Phillips v. Dunn*, No. 4:16-CV-1698-RWS (E.D. Mo. Oct. 31, 2016) (dismissed July 21, 2017) (appeal dismissed for lack of jurisdiction Sept. 6, 2018). Plaintiff's other cases were dismissed before service on any defendant for a variety of reasons, including failure to sign the complaint, frivolity, failure to state a claim, lack of jurisdiction, and failure to prosecute.

2   *Akathisia* is defined as the inability to remain still.

3   In one portion of his complaint, he states that he was awarded benefits on April 19, 2023, but in another portion of his complaint, he states that he was awarded benefits "four years" from 2015, which would have made the date April 19, 2019. Thus, the Court is unsure of the exact date plaintiff was awarded benefits.

4   In his complaint, plaintiff also states, "Kyle Beesley himself agreed" that his claim was a valid claim. However, plaintiff fails to identify Kyle Beesley.

5   "An action under *Bivens* is almost identical to an action under [42 U.S.C. §] 1983, except that the former is maintained against federal officials while the latter is against state officials." *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). As such, claims under *Bivens* and claims under § 1983 involve the same analysis. *Solomon v. Petray*, 795 F.3d 777, 789 n.7 (8th Cir. 2015). Furthermore, the body of case law regarding § 1983 applies to *Bivens* actions. *Id.* Even if plaintiff could identify the individual, plaintiff would need to exhaust his administrative remedies prior to bringing suit against such an individual under the Federal Tort Claims Act.

6   In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML   Document 5   Filed 01/07/25   Page 47 of 83

Bantis v. Government USA, Not Reported in Fed. Supp. (2023)

2023 WL 3977367
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Matthew BANTIS, Plaintiff,

v.

GOVERNMENT USA, Defendant.

23-CV-2492 (LTS)
|
Signed June 12, 2023

**Attorneys and Law Firms**

Matthew Bantis, Brooklyn, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff Matthew Bantis, who is appearing *pro se*, brings
this action invoking the Court's federal question jurisdiction.
By order dated March 31, 2023, the Court granted Plaintiff's
request to proceed *in forma pauperis* ("IFP"), that is, without
prepayment of fees. The Court dismisses the complaint for the
reasons set forth below.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof,
that is frivolous or malicious, fails to state a claim on
which relief may be granted, or seeks monetary relief from
a defendant who is immune from such relief. 28 U.S.C. §
1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction.
*See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal
on any of these grounds, the Court is obliged to construe *pro
se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d
Cir. 2009), and interpret them to raise the "strongest [claims]
that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470
F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted, emphasis in original).

A claim is frivolous when it "lacks an arguable basis either
in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25

(1989), *abrogated on other grounds by Bell Atl. Corp. v.
Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*,
504 U.S. 25, 32-33 (1992) (holding that "finding of factual
frivolousness is appropriate when the facts alleged rise to the
level of the irrational or the wholly incredible"); *Livingston*,
141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1)
the factual contentions are clearly baseless ...; or (2) the claim
is based on an indisputably meritless legal theory.") (internal
quotation marks and citation omitted).

**BACKGROUND**

Plaintiff, a Brooklyn resident, sets forth the following facts in
his complaint.

> They started using ear pieces in chess. I'm not allowed to
> compete due to ignorance and insecurity of the opposing
> players in the Chess Federation. All pro players. I have
> beaten a couple of them. They cheated.

> The same thing with fighting. Tiger Schulman's promised
> me the opportunity to enter professional and they lied. They
> are withholding me from my occupation and career.

> Basketball is very similar. Everyone under the organization
> has passed me up. They never wish to help. They never
> chose to help me develop[ ] by also getting me performance
> enhancing drugs. If not, I sue the pro players that are
> cheating on drugs. Still to this day, no accountability, while
> everyone progresses their career.

> School — the government of a foreign has ... disrespected
> me and forged four grades of mine and failed them. It is
> on my transcript. It is all there, 2021 Spring term. My life
> needs reparations from the discontinuation of being able to
> go famous under the American right, also freedom. Thank
> you.

(ECF 1 ¶ III.)

Plaintiff seeks $ 20 million, "to buy a couple [of] properties
and finish school. Real estate, just like my father. I need
reparations." (*Id.* ¶ IV.)

**DISCUSSION**

**A. Sovereign Immunity and the Federal Tort Claims Act**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 48 of 83

**Bantis v. Government USA, Not Reported in Fed. Supp. (2023)**

**\*2** Plaintiff names the government of the United States as the defendant in this lawsuit, but the Court must dismiss any claims against the federal government under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or officers in their official capacities is essentially a suit against the United States, such suits are ... barred under the doctrine of sovereign immunity, unless such immunity is waived.").

The Court considers whether these claims fall under the Federal Tort Claims Act ("FTCA"), which provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. "The proper defendant in an FTCA claim is the United States, not individual federal ... agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at \*1 (D. Conn. Jan. 9, 2015).

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds, United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court. *See* § 2675(a). While this exhaustion requirement is jurisdictional and cannot be waived, *see Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are nonjurisdictional and subject to equitable tolling," *Kwai Fun Wong*, 575 U.S. at 420.

To the extent that Plaintiff asserts claims for damages under the FTCA, he has not alleged facts demonstrating that he filed an administrative claim under the FTCA with a federal government entity for damages and subsequently received a final written determination before bringing this action; he has also not alleged facts showing that it has been more than six months since he has filed such an administrative claim. Accordingly, any claims for damages Plaintiff wishes to pursue against the United States of America in this action are not permissible under the FTCA and the Court dismisses Plaintiff's complaint under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. 12(h)(3).

**B. Plaintiff's claims are frivolous**

Plaintiff's complaint, when read with the "special solicitude" due to *pro se* pleadings, *Triestman*, 470 F.3d at 474-75, fails to allege any facts suggesting that he has a plausible legal claim. Plaintiff's factual allegations — that the federal government had some involvement in Plaintiff's negative experiences playing chess, participating in sports, or attending school — are largely irrational, or wholly incredible. *See Denton*, 504 U.S. at 33. The Court therefore dismisses Plaintiff's complaint as frivolous because it lacks a basis in law or fact. *See Neitzke*, 490 U.S. at 324-25; *Livingston*, 141 F.3d at 437.

**C. Leave to amend denied**

**\*3** District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend and dismisses the action as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

**CONCLUSION**

The Court dismisses this action under the doctrine of sovereign immunity, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and consequently, for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3). The Court additionally dismisses this action as frivolous. *See* § 1915(e)(2)(B)(i).

**Bantis v. Government USA, Not Reported in Fed. Supp. (2023)**

Case 1:24-cv-00970-AMN-ML     Document 5     Filed 01/07/25     Page 49 of 83

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3977367

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 50 of 83

Greenland v. United States, Not Reported in Fed. Supp. (2022)

2022 WL 2702656
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ronald C. GREENLAND, Plaintiff,
v.
UNITED STATES of America; The
Westchester Correctional Center, Defendants.

22-CV-4974 (LTS)
|
Signed July 11, 2022

**Attorneys and Law Firms**

Ronald C. Greenland, Attica, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge

 **\*1** Plaintiff, who is currently incarcerated at Attica Correctional Facility, brings this *pro se* action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. By order dated June 15, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees. [1] For the reasons set forth below, the Court now dismisses the complaint, but directs the Clerk of Court not to enter judgment for 30 days.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

**BACKGROUND**

Plaintiff Ronald Greenland alleges the following facts. On January 17, 2017, Plaintiff was detained in Westchester Correctional Center. He had a meeting with his attorney, "Mrs. Brody," that day, and thereafter was scheduled to appear in his pending criminal matter before Judge Karas in the United States District Court for the Southern District of New York. [2]

Before Plaintiff entered the interview room at Westchester Correctional Center to meet his attorney, a deputy from the United States Marshals Service placed Plaintiff in restraints on his hands and feet. The deputy then escorted Plaintiff to a barstool where he was seated during the interview. After the interview, Mrs. Brody called for the Marshals Service. A deputy arrived and directed Plaintiff to stand up and turn around. Plaintiff attempted to comply but the restraints on his legs were tangled with the legs of the barstool. Plaintiff fell and was unable to break his fall because he was still in restraints.

The deputy left Plaintiff in a holding cell, but Plaintiff was in excruciating pain. Another detainee alerted the Marshals Service of Plaintiff's distress and, approximately 45 minutes later, Plaintiff was taken to White Plains Hospital. (ECF 2 at 3.) At the hospital, Plaintiff was prescribed Motrin, provided a sling, and referred for follow-up treatment (X-rays, physical therapy). (*Id.* at 5.) As of the writing of the complaint, Plaintiff is still being treated for these injuries, and he describes himself as being under the "Continuing Treatment Doctrine." (*Id.*)

On October 28, 2018, about 20 months after he was injured, Plaintiff requested an administrative claim form from the United States Department of Justice (DOJ). (*Id.* at 3.) Plaintiff alleges that it has been "a slow piecemeal to receive documents" and that he has been "in continual contact" with certain individuals from the DOJ since that initial request. (*Id.*)

 **\*2** Plaintiff brings this action against the Westchester Correctional Center and the United States, invoking the FTCA. Plaintiff seeks unspecified damages.

**DISCUSSION**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 51 of 83

Greenland v. United States, Not Reported in Fed. Supp. (2022)

## A. Westchester Correctional Center

Plaintiff's claims against the Westchester Correctional Center must be dismissed because, under New York law, county agencies or departments do not have the capacity to be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

Instead, claims against the Westchester Correctional Center must be brought against the County of Westchester. When a plaintiff sues a municipality such as Westchester County under Section 1983, however, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Plaintiff alleges that he was detained at Westchester Correctional Center when his injury from the restraints occurred but does not plead any facts showing that any policy or custom of Westchester County caused a violation of his rights. Plaintiff's complaint gives no indication that he is asserting any wrongdoing on the part of the Westchester Correctional Center or Westchester County. It therefore appears that it would be futile to grant Plaintiff leave to amend in order to substitute Westchester County. The Court therefore dismisses, without leave to amend, Plaintiff's claim against Westchester Correctional Center on the ground that this entity lacks the capacity to be sued.

## B. Federal Tort Claims Act

"The United States, as sovereign, is immune from suit unless it waives immunity and consents to be sued." *See Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. § 1346(b)(1). "The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005). Thus, "[t]he proper defendant in an FTCA claim is the United States, not individual federal employees or agencies." *Holliday v. Augustine*, No. 3:14-CV-0855, 2015 WL 136545, at *1 (D. Conn. Jan. 9, 2015).

**\*3** A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain the claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, must specify the amount of damages sought, and must be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a).

A claimant may challenge the agency's final denial in a federal district court by filing an action within six months of the federal agency's mailing of the notice of denial. *See* § 2401(b). If no written final determination is made by the federal entity within six months of the claimant's filing of the administrative claim, the claimant may then bring a FTCA action in a federal district court. *See* § 2675(a).

This exhaustion requirement is jurisdictional and cannot be waived. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) (holding that a "claimant can only initiate his or her lawsuit once the claim has been denied by the agency or if the agency has failed to make a decision within six months after the claim was filed."); *McNeil v. United States*, 508 U.S. 106, 112 (1993) ("Congress intended to require complete

exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the FTCA imposes some burden on the judicial system."). By contrast, "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." *Kwai Fun Wong*, 575 U.S. at 420.

Here, Plaintiff alleges that he requested an administrative claim form from the Department of Justice (DOJ) on October 24, 2018, nearly four years ago. (ECF 2 at 3.) He alleges that it has been "a slow piecemeal process to receive documents" and that he has been "in continual contact" with certain individuals from the DOJ since that initial request. (*Id.*) Plaintiff does not allege, however, that he completed the form and filed an administrative claim, or that he received a denial of his claim from the agency.

Plaintiff's allegations do not demonstrate that, before bringing this action, he had filed an administrative claim under the FTCA and received a final written determination from the federal agency. He also fails to allege facts showing that it has been more than six months since he filed an administrative claim. Accordingly, the Court dismisses Plaintiff's FTCA claim under the doctrine of sovereign immunity.

**C. Leave to Replead**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Here, it appears that granting leave to amend would be futile because the requirement that administrative remedies be exhausted *before* bringing suit is not satisfied by a plaintiff's receipt of a federal agency's rejection of a claim after commencement of suit. *McNeil*, 508 U.S. 106.

The Court will hold this matter open on the docket for 30 days. If, before filing this action, Plaintiff did file his administrative claim, and either (1) received a final, written agency decision, or (2) the agency failed to respond within six months after receipt of Plaintiff's administrative claim, Plaintiff may submit an amended complaint pleading such facts.

**CONCLUSION**

**\*4** The Court dismisses Plaintiff's claim under 42 U.S.C. § 1983 against Westchester Correctional Center on the ground that this entity lacks the capacity to be sued. The Court dismisses Plaintiff's FTCA claim against the United States based on sovereign immunity. 28 U.S.C. § 1915(e)(2)(B)(iii).

The Clerk of Court is directed not to enter judgment and to hold this matter open on the docket for 30 days in order to provide Plaintiff an opportunity to file an amended complaint as set forth herein. If Plaintiff wishes to file an amended complaint, he must submit it to this Court's Pro Se Intake Unit within 30 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-4974 (LTS). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff does not file an amended complaint within the time allowed, the Court will enter judgment as set forth herein.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 53 of 83

Greenland v. United States, Not Reported in Fed. Supp. (2022)

_____    _____CV_____
Write the full name of each plaintiff.     (Include case number if one has been
                                            assigned)

         -against-                          **AMENDED**

_____               **COMPLAINT**

_____               Do you want a jury trial?
                                            ☐ Yes   ☐ No
_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

+--------------------------------------------------+
|                    **NOTICE**                     |
|                                                  |
| The public can access electronic court files. For privacy and security reasons, papers filed |
| with the court should therefore not contain: an individual's full social security number or full |
| birth date; the full name of a person known to be a minor; or a complete financial account |
| number. A filing may include only: the last four digits of a social security number; the year |
| of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| See Federal Rule of Civil Procedure 5.2.          |
+--------------------------------------------------+

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?
☐ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

**\*5**  Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____, is a citizen of the State of
                    (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing
information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name |
|---|---|---|
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | Email Address (if available) | |

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

_____

_____

Greenland v. United States, Not Reported in Fed. Supp. (2022)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 54 of 83

Defendant 1:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

Defendant 2:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

Defendant 3:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

Defendant 4:

First Name          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City          State          Zip Code

## III. STATEMENT OF CLAIM

**\*6**          Place(s)          of          occurrence:

_____

Date(s)          of          occurrence:

_____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

## INJURIES:

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## IV. RELIEF

**\*7** State briefly what money damages or other relief you want the court to order.

current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a

| Dated | | Plaintiff's Signature | |
| First Name | Middle Initial | Last Name | |
| Street Address | | | |
| County, City | | State | Zip Code |
| Telephone Number | | Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes  ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

### All Citations

Not Reported in Fed. Supp., 2022 WL 2702656

---

## Footnotes

1    Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis. See* 28 U.S.C. § 1915(b)(1).

2    Plaintiff was the defendant in *United States v. Greenland*, No. 17-CR-0065 (KMK) (S.D.N.Y.).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Santillan v. United States, Not Reported in Fed. Supp. (2020)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 56 of 83

2020 WL 902922
Only the Westlaw citation is currently available.
<u>NOT FOR PUBLICATION</u>
United States District Court, E.D. New York.

Hector SANTILLAN, Plaintiff,
v.
UNITED STATES of America, Michelle
Belgard M.D., Acting Clinical Director,
MDC Brooklyn N.Y., Defendants.

19-CV-5410 (AMD) (LB)
|
Signed 02/25/2020

**Attorneys and Law Firms**

Hector Santillan, Philipsburg, PA, pro se.

## <u>MEMORANDUM AND ORDER</u>

ANN M. DONNELLY, United States District Judge:

 **\*1** On September 16, 2019, the plaintiff, Hector Santillan, who is currently incarcerated at the Moshannon Valley Correctional Center in Pennsylvania, filed this *pro se* action pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 2.) By Memorandum and Order dated October 7, 2019, I granted the plaintiff's request to proceed *in forma pauperis*, dismissed the complaint for failure to state a claim and for lack of subject matter jurisdiction, and granted the plaintiff leave to file an amended complaint within 30 days. (ECF No. 6.) On December 5, 2019, I extended the deadline for the plaintiff to file an amended complaint to January 10, 2020. (ECF No. 10.)

On January 21, 2020, the plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983 along with an application for *pro bono* counsel. (ECF Nos. 11, 12.) For the reasons set forth below, the plaintiff's amended complaint is dismissed. [1]

## BACKGROUND

The amended complaint repeats the same allegations as the original complaint. Specifically, the plaintiff alleges that he was injured on August 28, 2013 when he fell from his bunk

at the Metropolitan Detention Center ("MDC") in Brooklyn. (ECF No. 11 at 10-14; ECF No. 1 at 4.)

The plaintiff also alleges that "F.B.O.P. employees were negligent" in "failing to render immediate medical treatment," in "failing to provide adequate medical services and indifferent to [his] pain and suffering," and "continuation of indifference and violation of [his] right to adequate medical care." (ECF No. 11 at 6.) The plaintiff further alleges that "the medical staff at the MDC Brooklyn committed failure to act on medical recommendations for surgery." (*Id.* at 9, 23.)

## STANDARD OF REVIEW

A federal court must "liberally construe[ ]" pleadings by *pro se* parties, and interpret their complaints to raise the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a complaint still must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

 **\*2** A district court should "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, the Court is required to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Similarly, under the *in forma pauperis* statute, the Court must dismiss a complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 57 of 83

Santillan v. United States, Not Reported in Fed. Supp. (2020)

The Court liberally construes the plaintiff's amended complaint as brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*"), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*

## I. *Bivens* Claim

An individual plaintiff may bring a claim against federal officials, in their individual capacities, for conduct violating the Constitution. *See generally Bivens*, 403 U.S. 338 (1971); *see also Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 403 (2d Cir. 2015) (*Bivens* "established that a citizen suffering a compensable injury to a constitutionally protected interest could ... obtain an award of monetary damages against the responsible federal official[.]") (citation omitted). The plaintiff "must allege a violation by a federal official of a clearly established constitutional right for which the federal official does not have immunity." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 219 (E.D.N.Y. 2007) (citing *Siegert v. Gilley*, 500 U.S. 226, 232(1991)). There is no vicarious liability under *Bivens*. *See Thomas v. Ashcroft*, 470 F.3d 491,497 (2d Cir. 2006) ("Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."). The statute of limitations is three years and begins to accrue when the "plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

Here, the plaintiff fails to state a claim against the defendants. According to the amended complaint, the plaintiff received medical treatment from various medical providers in September and October of 2013. (ECF No. 11 at 24-32.) Dr. Belgard referred the plaintiff to neurosurgery on August 30, 2013. (*Id.* at 23, 33-34.) The plaintiff has not alleged that Dr. Belgard denied him medical care or was personally involved in any denial of medical care.

Even if the amended complaint did plausibly allege that the defendants were somehow responsible for the plaintiff's failure to have neurosurgery, his claim is time-barred. The plaintiff argues that the "Court should ... consider Plaintiff's head injury" to toll the statute of limitations (ECF No. 11 at 7-8), but he attaches documents that show he was able to file prisoner grievances in January and February of 2017 while he was incarcerated at the Federal Medical Center in Devens, Massachusetts. (*Id.* at 15-21.) Those grievances also allege inadequate medical treatment, including the denial of neurosurgery, defeating his allegation that he could not timely file this action. (*Id.*) The plaintiff does not allege facts sufficient to support equitable tolling of the statute of limitations. Accordingly, his *Bivens* claim against Dr. Belgard is dismissed for failure to state a claim. 28 U.S.C. §§ 1915A, 1915(e)(2)(B).

## II. Federal Tort Claims Act

**\*3** While the United States is generally immune from suit, *see United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("The United States, as sovereign, is immune from suit save as it consents to be sued[.]") (citation and internal alteration omitted), the Federal Tort Claims Act ("FTCA") provides an exception to the rule and permits suit against the United States as "the exclusive remedy" for damages "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," *see Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991). Before bringing an FTCA claim in federal court, a plaintiff must fully exhaust available administrative remedies. *See McNeil v. United States*, 508 U.S. 106,113 (1993); *see also* 28 U.S.C. § 2401. The plaintiff must file the administrative claim with the appropriate federal agency within two years of the claim's accrual, and then file an action in federal court "within six months" of a "final denial of the claim by the agency." 28 U.S.C. §§ 2401(b), § 2675(a). It is the plaintiff's burden to demonstrate that he exhausted his administrative remedies.

The plaintiff does not provide any proof that he filed a tort claim as required under the FTCA. Rather, the plaintiff provides documents related to his prison grievances where he sought medical attention. This is not the same as a tort claim seeking damages. In fact, the prison alerted the plaintiff to this difference in its response to his grievance on March 9, 2017. (*See* ECF No. 11 at 15.) Therefore, the plaintiff's FTCA claim against the United States is dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

Accordingly, the plaintiff's amended complaint, filed *in forma pauperis*, is dismissed for failure to state a claim under *Bivens*, 28 U.S.C. §§ 1915A, 1915(e)(2)(B), and for lack of subject matter jurisdiction under the FTCA. Fed. R. Civ. P. 12(h)(3). The plaintiff's application for *pro bono* counsel is denied. The

**Santillan v. United States, Not Reported in Fed. Supp. (2020)**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 58 of 83

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 902922

---

### Footnotes

1    The plaintiff's request for counsel is denied. There is no right to a lawyer in a civil case. *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 453 (2d Cir. 2013). A court cannot require that a lawyer represent someone in a civil case without the lawyer being paid. *Mallard v. U.S. Dist. Court,* 490 U.S. 296 (1989). Instead, all that the Court can do is ask a lawyer to volunteer. In deciding whether to do this, the Court evaluates whether the plaintiff's position is "likely to be of substance." *Ferelli v. River Manor Health Care Ctr.,* 323 F.3d 196, 204 (2d Cir. 2003). The plaintiff's complaint does not establish the threshold requirement that his claims are "likely to be of substance." *Id.* Accordingly, the plaintiff's request for *pro bono* counsel is denied without prejudice.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 59 of 83

Shah v. Wingo, Not Reported in Fed. Supp. (2016)

2016 WL 4766502
Only the Westlaw citation is currently available.
United States District Court,
E.D. Arkansas, Eastern Division.

Vivek SHAH, REG # 43205-424, Plaintiff

v.

Michelle WINGO, Physician's Assistant, Forrest City
Low Federal Correctional Institution; et al., Defendants.

2:15CV00004-KGB-JJV
|
Signed 01/14/2016

**Attorneys and Law Firms**

Vivek Shah, Lexington, KY, pro se.

Jamie Goss Dempsey, U. S. Attorney's Office, Little Rock, AR, for Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS INSTRUCTIONS

JOE J. VOLPE, UNITED STATES MAGISTRATE JUDGE

 **\*1** The following partial recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court

Eastern District of Arkansas

600 West Capitol Avenue, Suite A149

Little Rock, AR 72201-3325

## DISPOSITION

Defendants filed a Motion for Partial Summary Judgment (Doc. No. 80) on November 12, 2015. Therein, they argued that Plaintiff failed to exhaust his administrative remedies against Defendants Summer Birkhead and United States of America. (*Id.*) I have already recommended Defendant Birkhead be dismissed. (Doc. No. 85.) After an initial review of the pleadings, I determined additional briefing would be helpful on the issue of whether Plaintiff's Federal Torts Claim Act ("FTCA") claims should proceed. (Doc. No. 86.) Both parties have now submitted additional argument on this point and the matter is ripe for disposition.

It is settled law that, prior to bringing a claim under the FTCA in federal court, a petitioner must exhaust administrative remedies. Specifically:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful

act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure to an agency to make final disposition of a claim within six months after it is filed shall ... be deemed a final denial for the purposes of this action.

**\*2** 28 U.S.C. § 2675(a). Defendants assert Plaintiff has filed four separate FTCA claims against Defendant United States of America. I will review each to determine whether it should proceed in this case.

First, on October 15, 2014, he submitted a claim based on the alleged denial of medication for chronic stomach pain. (Doc. No. 82-1 at 29.) This claim was denied on April 7, 2015. (*Id.* at 32-33.) Defendants point out that this claim is the subject of another case before this district – *Shah v. Wooten*, 2:15CV00078-BSM-BD. I have reviewed the Complaint in this case and agree. *Id.*, Doc. No. 1 at 11-12. Accordingly, this claim will be dismissed without prejudice so Plaintiff may pursue it in that case.

Second, Plaintiff submitted a claim on December 13, 2014, complaining he had been harmed by a lack of toiletries. (Doc. No. 82-1 at 36-37.) This claim was denied on March 11, 2015. (*Id.* at 40-41.) This claim is barred by *res judicata* [1] because it formed the basis for *Shah v. USA*, 4:15CV00161-SWW, which was dismissed with prejudice on December 1, 2015. *Id.* at Doc. Nos. 29-30. Accordingly, this claim cannot be pursued in this action.

Third, Plaintiff submitted a January 8, 2015, claim which alleged he had not received arch supports for his shoes and he had again been denied gastrointestinal medication. (Doc. No. 82-1 at 44-45.) In the initial Brief in Support of their Motion, Defendants state "[a]s of June 5, 2015, no response has been sent by the BOP." (Doc. No. 81 at 3.) Given the date of Plaintiff's Amended Complaint (Doc. No. 32) is April 7, 2015, I conclude this claim was not exhausted at the time this FTCA claim was introduced to this action. No agency response was issued by that date and the six month deadline for a non-

response to constitute a final denial would not have run until July that year. This claim will, therefore, be dismissed without prejudice as unexhausted.

Finally, Plaintiff submitted a fourth FTCA claim on July 29, 2014, which made general complaints about the health care he received at FCC Forrest City. (Doc. No. 82-1 at 51-52.) This claim was not actually received by the Bureau of Prisons until February 18, 2015. (Doc. No. 87-2.) Plaintiff argues this claim, which he mistakenly sent to the Department of Justice ("DOJ"), should be considered received on August 20, 2014 – the date the DOJ acknowledged receipt of his documents. (Doc. No. 84 at 1-2.) In support of this proposition, he cites Program Statement 1320.06 to 28 C.F.R. § 543.32(a) which states that "[a] claim that is transferred to another Bureau office will be considered filed with that office when the claim was received by the first appropriate agency office." (Doc. No. 87-1 at 5.) Defendants argue this regulation merely explains the process of receiving an acknowledgment letter for an FTCA claim. They note Plaintiff did receive a letter from the DOJ after the initial submission of this claim, but they state the letter was merely a response to one of Plaintiff's letters rather than an acknowledgment of claim receipt. (Doc. No. 82-1 at 49.) The claim was actually received for processing on February 18, 2015, and a final denial issued on or about May 27, 2015. (Doc. No. 87-2; 82-1 at 55-57.)

**\*3** This procedural history presents a difficult question. Whether claims were presented to the appropriate federal agency and denied in writing prior to an FTCA suit's filing is a jurisdictional question. *See Osborn v. United States*, 918 F.2d 724, 728 (8th Cir. 1990). It is Plaintiff's burden to show federal jurisdiction exists under the FTCA. *See Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) ("Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant."). Although Plaintiff says he submitted his claim to the DOJ – of which the Bureau of Prisons is a part – and received some form of acknowledgment on August 20, 2014 (Doc. No. 82-1 at 49), Defendants dispute this fact. They say this letter was responding to an FTCA claim and Mr. Shah provides no proof to support his allegation. And since it was Mr. Shah's burden to show he properly exhausted this claim, he should have provided a copy of his mailing. Based on these facts, I recommend dismissal for failure to exhaust.

But this recommendation is not fatal to Mr. Shaw's fourth claim. As the United States notes, Plaintiff raised this same FTCA claim in *Shah v. Wooten, et al.*, 2:15CV00078-BSM-

Shah v. Wingo, Not Reported in Fed. Supp. (2016)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 61 of 83

BD and, in that case, he properly exhausted his fourth claim prior to filing suit. (Doc. No. 87 at 6-7.) So I will therefore recommend dismissal of this claim without prejudice so it may proceed in 2:15CV00078.

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Partial Summary Judgment (Doc. No. 80) be GRANTED.

2. Plaintiff's FTCA claims against Defendant United States of America be DISMISSED as follows:

A. His claims submitted on October 15, 2014 (TRT-SCR-2015-00222), January 8, 2015 (no number available),

and July 29, 2014 (TRT-SCR-2015-02567) be DISMISSED without prejudice.

B. His claim arising on December 13, 2014 (TRT-SCR-2015-01377) be DISMISSED with prejudice as barred by *res judicata*.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

IT IS SO RECOMMENDED this 14th day of January, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4766502

---

## Footnotes

1    Under the doctrine of *res judicata* "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Shah v. Wingo, Not Reported in Fed. Supp. (2016)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 62 of 83

2016 WL 4744150
Only the Westlaw citation is currently available.
United States District Court,
E.D. Arkansas, Eastern Division.

Vivek SHAH, Reg. # 43205-424, Plaintiff

v.

Michelle WINGO, Physician's Assistant,
FCC-Forrest City Low, et al., Defendants.

Case No. 2:15-cv-00004 KGB-JJV
|
Signed 09/12/2016

**Attorneys and Law Firms**

Vivek Shah, Lexington, KY, pro se.

Jamie Goss Dempsey, U. S. Attorney's Office, Little Rock,
AR, for Defendants.

### ORDER

Kristine G. Baker, United States District Judge

 **\*1** The Court has reviewed the three Proposed Findings and
Partial Recommended Dispositions ("Recommendations")
submitted by United States Magistrate Judge Joe J. Volpe
(Dkt. Nos. 85, 89, 93). No objections have been filed to any
of the Recommendations, and the time to file objections has
passed. After careful review, the Court concludes that the
Recommendations should be, and hereby are, approved and
adopted in their entirety as this Court's findings in all respects.

It is, therefore, ordered that:

1. Defendants' motion for partial summary judgment is
granted (Dkt. No. 80).

2. Plaintiff Vivek Shah's claims against defendant Summer
Birkhead are dismissed without prejudice due to Mr. Shah's
failure to exhaust administrative remedies against Ms.
Birkhead.

3. Mr. Shah's Federal Torts Claims Act claims against
defendant United States of America are dismissed as follows:

A. Mr. Shah's claims submitted on October 15, 2014 (TRT-
SCR-2015-00222), January 8, 2015 (no number available),
and July 29, 2014 (TRT-SCR-2015-02567) are dismissed
without prejudice.

B. Mr. Shah's claim arising on December 13, 2014 (TRT-
SCR-2015-01377) is dismissed with prejudice as barred by
*res judicata.*

4. Defendant Michelle Wingo's motion for partial summary
judgment is granted (Dkt. No. 90).

5. Mr. Shah's claims against Ms. Wingo are dismissed with
prejudice.

6. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3),
that an *in forma pauperis* appeal from this Order would not
be taken in good faith.

So ordered this the 12th day of September, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 4744150

---

**End of Document**　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 63 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

2022 WL 2304213
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Christopher J. VAZQUEZ, Plaintiff,
v.
HOMETOWN HEALTH CENTER
OF AMSTERDAM, NY, Defendant.

No. 1:21-CV-1371 (MAD/CFH)
|
Signed 06/27/2022

**Attorneys and Law Firms**

Christopher J. Vazquez, 45 Arnold Ave., Unit 2, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Christopher J. Vazquez ("plaintiff") purported to commence this action on December 22, 2021, by filing a complaint. See Dkt. No. 1 ("Compl."). Plaintiff did not pay the filing fee or submit an application for leave to proceed in forma pauperis ("IFP"). See id. Accordingly, the Court administratively closed the case with an opportunity to comply with the filing fee requirement. See Dkt. No. 2. The Order directed plaintiff to either submit the full $402 filing fee or complete an IFP application within thirty days of the filing date of the Order. See id. at 2. The Order was filed on December 22, 2021. See id. Thus, plaintiff had until January 21, 2022, to timely pay the filing fee or file an IFP application. Plaintiff was sent a copy of this order by regular mail. Plaintiff submitted an IFP motion on February 28, 2022, 38 days past the deadline set forth in the administrative closure order. See Dkt. No. 3.

Despite plaintiff's untimeliness, given the fact that he is proceeding pro se, and due to special solicitude, the undersigned will consider this belated filing. Plaintiff has previously failed to follow these filing requirements, but the undersigned has nevertheless considered the IFP application. See Vazquez v. Times Union Newspaper, 1:21-CV-1359 (DNH/CFH), Dkt. No. 5 at 1-2. The undersigned has

reviewed plaintiff's present IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing. [1] See Dkt. No. 3.

### II. Initial Review

#### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (citation and internal quotation marks omitted). This does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds on which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se litigants are "not exempt ... from compliance with relevant rules of procedural and substantive law[.]" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 64 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Filing History [3]

Plaintiff has a history of filing in the Northern District of New York, untimely IFP applications and complaints that are often dismissed at the pleading stage. The following recitation of plaintiff's filing history has been derived from Chief Judge Suddaby's Show Cause Order in case number 1:22-PF-2 (GTS), Dkt. No. 1 at 2-4:

1. Vazquez v. Dollar General Corp., 1:21-CV-0330 (BKS/ CFH), Dkt. No. 14 (dismissing plaintiff's complaint without prejudice); Dkt. No. 15 (entering judgment dismissing plaintiff's complaint following his failure to file an amended complaint); see 2021 WL 4407817, at *4 (N.D.N.Y. Sept. 27, 2021), motion for relief from judgment denied, 2022 WL 279560 (N.D.N.Y. Jan. 31, 2022). [4]

2. Vazquez v. Times Union Newspaper, 1:21-CV-1359 (DNH/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion); Dkt. Nos. 5, 7, 8 (granting plaintiff's belatedly filed IFP motion but dismissing the complaint with prejudice and without leave to amend for failure to state a claim or establish subject matter jurisdiction); see 2022 WL 837474, at *4 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).

*3 3. Vazquez Carbuccia v. State of New York, 1:22-CV-0196 (GTS/CFH), Dkt. No. 2 (ordering administrative closure for plaintiff's failure to pay the filing fee or file an IFP motion).

4. Vazquez v. St. Mary's Healthcare, 1:22-CV-0317 (GTS/ TWD), Dkt. No. 2 (ordering administrative closure for failure to pay the filing fee or file an IFP motion); Dkt. No. 7 (recommending dismissal of the complaint for failure to state a claim or establish subject matter jurisdiction); see 2022 WL 1659194, at *4 (N.D.N.Y. May 25, 2022).

Based on these filings, and plaintiff "becom[ing] increasingly abusive when communicating with Court staff[,]" on May 2, 2022, Chief Judge Suddaby ordered plaintiff to, within fourteen days, "show cause, in writing, why he should not be enjoined from filing any future pleadings or documents of any kind (including motions) in the Northern District of New York *pro se* without prior permission of the Chief Judge or

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 65 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

his or her designee[.]" In re: Christopher J. Vazquez, 1:22-PF-002 (GTS), Dkt. No. 1 at 4, 8. Plaintiff did not respond within fourteen days and on May 23, 2022, Chief Judge Suddaby entered a pre-filing injunction pursuant to 28 U.S.C. § 1651(a), permanently enjoining plaintiff from filing any documents in the Northern District without prior permission of the Chief Judge or his or her designee. See id. at Dkt. No. 2. Plaintiff's filings in the present matter were filed prior to Chief Judge Suddaby's imposition of the injunction and, as such, the undersigned will proceed to review the complaint's sufficiency under the § 1915 standard. See id. at 7 ("[N]othing in this Pre-filing Order ... affects his rights in any of his currently pending actions[.]").

### C. Plaintiff's Complaint

Plaintiff does not submit a formal complaint in this matter; rather, he submits a two-page, handwritten letter seeking to sue "Hometown Health Center[ ] of Amsterdam, NY for Emotional Distress and abuse of process." Compl. at 1. Plaintiff contends that Hometown Health Center "denied [him] the Narcotics that [he] requested and gave [him] a refer[r]al to pain management." Id. Plaintiff asserts that as to his request for Percocet, it would be "logical" for Hometown Health Center to "need [his] doctor[']s notes from [his] former primary [care provider] and surgeon" but that he "had every right to be served" a Xanax prescription. Id. Plaintiff seeks "25,000 USD, non-negotiable." Id. at 2.

In a letter to the Court filed May 6, 2022, plaintiff states, "I need 25 million USD from St. Mary's Institution Non-negotiable. I need 25 million USD from Hometown Health Center(s) in Amsterdam New York. Non-negotiable. Both of these, 'Institutions' denied me my God given resources even after I began 'pain management services.'" Dkt. No. 7. [5] Plaintiff also filed a letter seeking "an Oath, to insure confidentiality [of] All Courthouse Matters" and "diplomatic immunity[.]" Dkt. No. 6. [6]

### D. Analysis

**\*4** Plaintiff's complaint does not comply with the pleading standards set forth in Fed. R. Civ. P. 8 and 10. Plaintiff provides next-to-no context for his claims such as when or why he requested medications, when or why he was denied the medications, or how he was harmed by the denial.

See Compl. This is insufficient to state a claim for relief. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). [7]

Plaintiff has also failed to establish this Court's subject matter jurisdiction. See Walcker v. Hovey, No. 5:17-CV-889 (TJM/TWD), 2017 WL 4417753, at *2 (N.D.N.Y. Sept. 13, 2017), report and recommendation adopted, 2017 WL 4417680 (N.D.N.Y. Oct. 3, 2017) (citation omitted) ("[T]he Court's initial review under 28 U.S.C. § 1915(e) must include consideration of whether the court has subject matter jurisdiction over the plaintiff's claims."). "In order to invoke federal question jurisdiction, the plaintiff's claims must arise 'under the Constitution, laws, or treaties of the United States.'" Morillo v. Trexx, No. 5:17-CV-01125 (GTS/TWD), 2017 WL 6372569, at *3 (N.D.N.Y. Nov. 6, 2017), report and recommendation adopted, 2017 WL 6372780 (N.D.N.Y. Dec. 12, 2017) (quoting 28 U.S.C. § 1331). "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." New York v. White, 528 F.2d 336, 338 (2d Cir. 1975). In other words, "[f]ederal question jurisdiction exists where the complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law.'" Times Union Newspaper, 2022 WL 837474, at *3 (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)). Plaintiff cites no federal statute or provision of the Constitution under which he is attempting to bring his complaint. See Compl.

Plaintiff has also failed to establish diversity jurisdiction. Diversity jurisdiction can be established when the case is between citizens of different States and the "matter in controversy exceeds the sum or value of $75,000[.]" 28 U.S.C.A. § 1332(a)(1). Plaintiff lives in Amsterdam, New York, and is seeking to sue Hometown Health Center, located in Amsterdam, New York. See Compl.; see also St. Mary's Healthcare, 2022 WL 1659194, at *3 ("Plaintiff cannot establish diversity jurisdiction because Plaintiff and Defendant are all citizens of the same state, New York. Plaintiff provides that he lives in Amsterdam, New York, and St. Mary's Healthcare is located in Amsterdam, New York."). As the purported defendant is from the same State as plaintiff, he has failed to establish diversity jurisdiction.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 66 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

However, giving the utmost deference to his pro se status, plaintiff's two-page complaint could be construed as raising a medical malpractice claim. See Compl. The Federal Tort Claims Act ("FTCA") "confers jurisdiction on federal district courts to hear claims against the United States alleging 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.' " Williams v. United States, No. 03-CV-9909 (GEL), 2007 WL 951382, at *3 (S.D.N.Y. Mar. 22, 2007) (citing 28 U.S.C. § 1346(b)). "Tort claims, such as claims of medical malpractice, are actionable under the FTCA." Id. (citation omitted).

 **\*5** Hometown Health Centers is a federally funded institution; therefore, a claim could be brought against them under the FTCA. See Hometown Health Centers, https://www.hometownhealthcenters.org/compliance-governance (last visited June 23, 2022) (explaining that "Hometown Health Centers is a federal Public Health Service employee. It receives US Department of Health and Human Services (HHS) funding and has Federal Public Health Service (PHS) deemed status regarding certain health or health-related claims, including medical malpractice claims, for itself and its covered individuals through the [FTCA]."); Phillips v. Generations Fam. Health Ctr., 723 F.3d 144, 147 (2d Cir. 2013) (citing 42 U.S.C. §§ 233(g)-(n), 254b) ("[C]ertain health centers that receive federal funding under the Public Health Service Act and serve 'medically underserved' populations can be 'deemed' by HHS as federal health providers even if they are private organizations. These federal health providers are considered federal employees for purposes of medical malpractice claims, and plaintiffs wishing to sue the providers or their employees must comply with the requirements of the FTCA."). "Under the FTCA, before a claimant can file suit, he or she must first present the claim to the appropriate federal agency (in this case HHS) within two years of the date the claim accrued[ ]" and a lawsuit may be brought only "once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." Phillips, 723 F.3d at 147 (citing 28 U.S.C. §§ 2401(b), 2675(a)). "A plaintiff bears the burden to plead and prove compliance with the exhaustion requirements of the FTCA." Spina v. Lu Feng Liu, 541 F. Supp. 3d 426, 433 (S.D.N.Y. 2021) (citations omitted).

Plaintiff does not allege that he filed a claim with HHS prior to attempting to bring this action against Hometown Health

Center. See Compl. Moreover, plaintiff has not asserted when the alleged actions occurred; therefore, the undersigned cannot engage in an analysis to determine if plaintiff's complaint meets the FTCA's two-year statute of limitations period. See Torres v. United States, 612 F. App'x 37, 39 (2d Cir. 2015) (summary order) (citing 28 U.S.C. § 2401(b)). "Where a plaintiff fails to exhaust administrative remedies, the district court lacks subject matter jurisdiction over the FTCA claims." Spina, 541 F. Supp. 3d at 433 (citing Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005); Davila v. Gutierrez, 330 F. Supp. 3d 925, 936 (S.D.N.Y. 2018)). As plaintiff failed to plead compliance with the FTCA's exhaustion requirements, the undersigned recommends dismissal of the complaint without prejudice. See Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]").

Even absent these procedural deficiencies in plaintiff's filing, "[u]nder New York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." Torres v. City of N.Y., 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001) (citation omitted); see Corley v. United States, 11 F.4th 79, 85 (2d Cir. 2021) (explaining that state substantive law will apply to a medical malpractice claim brought under the FTCA). "Accordingly, in order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care." Isaac v. City of N.Y., No. 17-CV-1021, 2018 WL 1322196, at *7 (S.D.N.Y. Mar. 13, 2018) (citations omitted). Plaintiff has not alleged any injuries because of the denial of narcotics or Xanax, nor in any way demonstrated that denial was a deviation from the standard of care. See Compl. Given the numerous deficiencies in plaintiff's purported complaint, the undersigned recommends dismissal. [8]

### III. Opportunity to Amend

 **\*6** Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 67 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

'inadequately or inartfully pleaded' complaint, an opportunity to re-plead 'should be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)). "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect." Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at *6 (N.D.N.Y. June 1, 2012) (footnote omitted). As plaintiff has not established jurisdiction, and in light of the problems in plaintiff's filing history, the undersigned recommends dismissing plaintiff's complaint without leave to amend. See, e.g., St. Mary's Healthcare, 2022 WL 1659194, at *4 (citing Johnson v. Progressive.com, 19-CV-11202 (CM), 2020 WL 589127, at *1 (S.D.N.Y. Feb. 5, 2020) (declining to grant pro se plaintiff leave to amend in light of the plaintiff's "abusive litigation history" and where amendment would be futile)); see also Times Union Newspaper, 2022 WL 833370, at *1 (dismissing with prejudice and without leave to amend).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 3) will be considered, and, upon consideration, is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [9]

### All Citations

Not Reported in Fed. Supp., 2022 WL 2304213

---

### Footnotes

1    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any costs and fees that he may incur in this matter, including, but not limited to, any copying fees or witness fees.

2    The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4    Although the undersigned provides the Westlaw citations for plaintiff's other cases in the Northern District, copies have not been provided to plaintiff as he was provided copies by certified and/or regular mail when the orders or decisions were filed.

5    Plaintiff filed an identical letter in Vazquez v. St. Mary's Healthcare, 1:22-CV-317 (GTS/TWD), Dkt. No. 5.

6    Plaintiff filed an identical letter in Vazquez v. St. Mary's Healthcare, 1:22-CV-317 (GTS/TWD), Dkt. No. 6.

Case 1:24-cv-00970-AMN-ML   Document 5   Filed 01/07/25   Page 68 of 83

Vazquez v. Hometown Health Center of Amsterdam, NY, Not Reported in Fed. Supp....

7   In a separate letter, plaintiff seeks "Diplomatic Immunity[.]" Dkt. No. 6. Diplomatic immunity protects "those most integral to the diplomatic mission, active 'diplomatic agents,' defined to include 'the head of the mission or a member of the diplomatic staff of the mission.' " Broidy Cap. Mgmt. LLC v. Benomar, 944 F.3d 436, 442 (2d Cir. 2019) (footnote and citation omitted). Plaintiff has in no way established that he is entitled to diplomatic immunity. See Compl; Dkt. No. 6.

8   Plaintiff's letter submitted in May 2022, mentions "St. Mary's Institution[,]" although he does not name St. Mary's in his complaint. Dkt. No. 7; see Compl. The undersigned notes that plaintiff was likely not attempting to bring St. Mary's into this action as in his letter, plaintiff lists the case number for the present action as well as his case against St. Mary's. See Dkt. No. 7. Plaintiff filed an identical letter in his purported action against St. Mary's. See St. Mary's Healthcare, 1:22-CV-317, Dkt. No. 5.

9   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 69 of 83

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo*, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 70 of 83

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambray v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 71 of 83

no clear error on the face of the record in order to accept the recommendation").

 **\*3**  Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1]  The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 72 of 83

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 73 of 83

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 74 of 83

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 75 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of Minnesota and Olmested County Court Systeam, and State of Minnesota, Saint Peter State Hospital, Doctor Gammel Stephelton, et el Erickson, North West Bank and Trust, Olmested County Social Service, J.C. Penny Insurnce, Metmore Finicial, Traveler Insurnce, Comecial Union Insurnce, Hirman Insurnce, Amrican State Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi Insurnce, Steven Youngquist, Kent Chirstain, Micheal Benson, United Airline, Kowate Airline, Fordmotor Cridite, First Bank Rochester, George Restwich, British Airways, Western Union, Prudenial Insurnce, T.C.F. Bank, Judge Sandy Kieth, Judge Niergari, Olmestead County Judgering, Judge Mores, Judge Jacobson, Judge Challien, Judge Collin, Judge Thomase, Judge Buttler, Judge Morke, Judge Moweer, Sera Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.

|

May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn., St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel, for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon, Michael J. Holland, of counsel, for British Airways, P.L.C. and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths, of counsel, for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert J. Smith, of counsel, for Travelers Ins. Companies; Hirman Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas N. Kaufmann, of counsel, for American States Ins. Co. and Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F. Larkin, Asst. U. S. Atty., of counsel, for Michael Benson, Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F. Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY, George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte*

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 76 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 77 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3**  Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 78 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

 **\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

    A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

    B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 79 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 80 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6).[7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,*[8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 81 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics.[9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

### IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

### CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

---

### Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

Case 1:24-cv-00970-AMN-ML    Document 5    Filed 01/07/25    Page 83 of 83

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9